Hall v. Getman.

---

ALLIE HALL, by her Next Friend, Respondent, v. H. H. GETMAN, Administrator, Appellant.

Kansas City Court of Appeals, November 5, 1906.

1. CONTRACT: Performance: Indefinite Terms: Consideration: Remedy: Equity. Where a contract calls for the performance of services by the plaintiff, the extent and value of which appear speculative and contingent, such as caring for old people during life, and the consideration is equally indefinite and speculative as the estate such parties might leave, the law fails to furnish any adequate measure of damages for its breach and a specific remedy would be an action in equity against the heirs of the contracting old people for specific performance.

2. ————: ————: ————: Breach: Quantum Meruit. However, on such contract an action at law lies against the estate on *quantum meruit* and the measure of damages is the reasonable value of the services rendered.

3. ————: ————: Breach: Wills: Creditors. To permit an action at law to recover value of the property mentioned in the contract would not only be a violation of the statute of wills but would by the judgment render,fixed and certain that which under the terms of the contract was in its nature indefinite and contingent, to the injury of the creditors of the estate.

4. ————: ————: ————: Law: Equity: Damages. The insufficiency of the rules for measure of damages at law for breach of such contract is sufficient reason for compelling a resort to equity if the plaintiff wishes full fruits of her contract. (Clark v. Cordry, 69 Mo. App. 6, distinguished and limited.)

Hall v. Getman.

Appeal from Jackson Circuit Court.—*Hon. James H. Slover,* Judge.

AFFIRMED.

*J. Allen Prewitt* for appellant.

(1) The court erred in holding that plaintiff could not recover in this form of action. Koch v. Hebel, 32 Mo. App. 110; Clark v. Cordry, 69 Mo. App. 13; Walker v. Gays' Estate, 73 Mo. App. 89; Sharkey v. McDermott, 91 Mo. 655; Waters v. Cline, 85 S. W. 209; Chamberlain v. Dunlop (N. Y.), 22 Am. St. 888; Estate of Kessler, 41 Am. St. 74; Hayward v. Leonard, 19 Am. Dec. 277; Kosmer v. Wilson, 7 Mich. 294; Caviness v. Rushton (101 Ind. 500), 51 Am. Rep. 759. (2) Plaintiff's petition is sufficient to support either of the two last mentioned remedies. Plaintiff in the original petition based it purely on the second remedy above set out. The amendment which was made to the petition as suggested by the court brought the same within the third remedy above suggested. The following cases amply support plaintiff's theory in this respect: Toher v. Schaffer, 91 N. Y. 3, 45 Misc. 618; Evans v. Howell, 71 N. E. 854, 211 Ill. 85; Bryson v. McShane, 35 S. E. 850; McCuller v. Baker, 47 Mo. 402; Barnett v. Swearengin, 77 Mo. App. 71; Ahern v. Boyce, 19 Mo. App. 552, and cases cited under paragraph I. (3) Plaintiff having fully performed her part of the contract is not estopped by the statute of frauds from recovering for its breach by decedent. Marks v. Davis, 72 Mo. App. 563; Chenoweth v. Express Co., 93 Mo. App. 191; Smith v. Davis, 90 Mo. App. 538; Donovan v. Brewing Co., 102 Mo. App. 427; Winters v. Cherry, 78 Mo. 351; Bless v. Jenkins, 129 Mo. 647; Hall v. Harris, 145 Mo. 614; Healy v. Simpson, 113 Mo. 347; Andrews v. Broughton, 84 Mo. App. 640, 78 Mo. App. 187.

*A. M. Ott* and *Paxton & Rose* for respondent.

(1) The residue of an estate left after the payment of the debts is not a debt, and cannot be allowed as a debt. Graham v. Graham's Executor, 34 Pa. St. 475. (2) The residue of an estate, if allowed as a fifth class claim, would compel other claims of like quality to prorate with it, and would entirely cut off claims of the sixth class; and thus the residue which was to come after the debts, would come before part of them and would crowd the remainder. (3) The residue of an estate, after payment of debts, is the inheritance, and any suit which affects it should be brought in equity against the heirs, not in the probate court against the administrator. Clark v. Cordry, 69 Mo. App. 12. (4) The services rendered by plaintiff cannot be measured by the value of the estate at Mrs. McConnell's death, because that was uncertain and no definite amount of value was in the minds of the parties when the contract was made.    Lisk v. Sherman's Ex'r, Barb. (N. Y.) 437.

JOHNSON, J.—This action was brought in the probate court of Jackson county against the administrator of Fannie J. McConnell, deceased, to recover damages in the sum of $3,000 for an alleged breach by decedent of an oral contract under the terms of which, the decedent in consideration of services to be rendered by plaintiff and which were afterwards fully performed, agreed that plaintiff should receive her whole estate at her death. On appeal to the circuit court the case was tried before a jury and plaintiff recovered judgment in the amount prayed, but subsequently the court sustained the motion for a new trial and in arrest of judgment filed by defendant on the ground, "that the court erred in giving plaintiff's instructions and upon the whole record and the law and the evidence in the case plaintiff is not

entitled to recover in this form of action" and plaintiff appealed.

The facts in evidence are undisputed. William McConnell and his wife Fannie J., owned as tenants by the entirety, a farm of forty acres near Independence, which they occupied as their home. The place was valued at about $2,000. They had a little money in bank and some other personal property, all of the value of $2,000. They lived alone on the farm, were childless and both were very old, feeble and infirm. Plaintiff, their grandniece, was thirteen years of age, large, strong and able to do the work of a household at the time the relation began, which gives rise to this controversy. Her mother, a niece of the McConnells, had died some years before and she was living with her aunt, but was supported by her father. Plaintiff was born under the McConnell roof and her mother had been the favorite niece of the old couple. In March, 1902, the McConnells sent for plaintiff's father. On his arrival this, as told by a disinterested witness, is what occurred. "Mrs. McConnell had been very sick; indeed they both had been sick and Mrs. McConnell was in bed — she had been very sick and I had been over a number of nights and sat up with her, and this night I had been up all night; and in the early morning, I think before breakfast, she told me to tell Mr. Wilson (plaintiff's father) to come into her room, and I called him in. Mr. McConnell was present, he was sitting by the side of the bed. She said: "Charley" (that is Mr. Wilson), "I want you to let Allie come and stay with me as long as we live, and if you will she may have my home and all I have." And Mr. McConnell was sitting by the side of the bed and he said, "Yes, she can." Well, Mrs. McConnell says, "Well, Charley, I want you to go and get a lawyer and have him come out and make a will, and do it this morning," and Mr. McConnell says, "No, you get Ike Rogers, he will not charge anything." And Mrs. McConnell says, "Get Mr.

Rogers and have him come out." And Mr. Wilson says: "Oh, Aunt Fanny, you will get better in a time and then you can fix this;" and Mr. McConnell says: "As soon as the weather moderates a little I will go to town and have it all fixed; it is too cold now; I am not able now; but I will be better in a few days." Q. "What did Mr. Wilson say?" A. "Mr. Wilson, when Aunt Fanny wanted Allie to come there said, 'Yes, Aunt Fanny, I will bring Allie.'"

This testimony was corroborated by that of a number of other disinterested witnesses, one of whom acted as the messenger to summon Mr. Wilson and had been instructed by the McConnells to tell him that if "Allie" would come and live with them, she should have all their property. Others testified to statements made to them by the McConnells to the effect that the girl was to have all of their property and without detailing the evidence it is enough to say that the fact is undisputed and apparently indisputable that plaintiff entered the home of these old people on the express agreement that by will or otherwise, they would leave all of their property to her. All of the witnesses agree that this mere child fully performed the arduous duties of her position with cheerful bravery. A few months after her advent, the old man's senility dethroned his reason, but he lingered on a helpless invalid until February, 1903, when he died. The old lady was nearly blind, very feeble and survived her husband but a month. Plaintiff did all of the housework and cooking, nursed and waited on her charges, and at times performed the work of a farm hand in caring for the live stock on the place. Not only did she render the service that money can buy, but she brightened the last days of this lonely couple with the affectionate companionship of one of their own blood a service money can neither buy nor measure.

On her husband's death, Mrs. McConnell became the sole owner of the farm and of one-half the personal

property, all of the estimated value of $3,000 and this property she owned at the time of her death. The promised will was not executed nor was any provision made to recompense plaintiff. Before the bringing of this suit plaintiff intermarried, but being a minor, the action is prosecuted by her father, her guardian. The inventory and appraisement of the defendant's estate shows assets as follows: Money, $1,220.90; other personalty, $93.58; real estate valued at $2,000. Total $3,314.48.

The claims allowed against the estate are as follows: Class one, $98; class two, $5; class five $80. The evidence tends to show that the estate owes no other debts except the claim of plaintiff, which if allowed will belong to the fifth class. At the time of trial the time for proving claims belonging to the sixth class had not expired. The expenses of the administration are not disclosed.

The theory on which the case was submitted to the jury appears in this instruction given on behalf of plaintiff:

"The court instructs the jury that if they find from the evidence that plaintiff and decedent, Fannie J. McConnell, entered into the contract alleged, and that plaintiff fully performed the contract on her part, and that said decedent failed to comply therewith on her part and died without having willed, devised, bequeathed or conveyed to Allie Hall the property which by the contract she agreed to will, devise, bequeath or convey to her, if you so find the facts, then under the pleadings and the evidence in this case your verdict must be for the plaintiff, and you will assess her damages at such sum as you may believe from the evidence to be the value of the property which decedent agreed to will, devise, bequeath or convey to her at death of decedent, if you so find the facts, not exceeding the sum of $3,000, even though you may further believe that the reasonable value of such services of plaintiff for the

whole period for which she claims will not equal such amount."

It will be observed the measure of plaintiff's damages for the breach of contract was treated as being controlled entirely by the provisions of the contract without regard to the actual value of the services rendered. It is the contention of defendant that as the parol agreement of the parties bound Mrs. McConnell not to pay plaintiff a fixed and definite amount as a consideration for the services to be rendered, but to make plaintiff her heir, that is, to give plaintiff the residue of the estate remaining after the payment of the allowed demands of creditors and the costs of the administration plaintiff's claim to the inheritance cannot be regarded as a debt of the estate and may only be enforced in an action in equity prosecuted against the persons who, but for the agreement, would have inherited the estate under the statute of descents and not against the personal representative of the decedent. On the other hand plaintiff contends that as she was employed under an agreement, that the services were not to be gratuitous and fully performed her part of the agreement, three remedies were open to her:

First, she could sue the heirs in equity for the specific performance of the contract. Second, she could sue the administrator in an action at law upon the contract for its breach and recover damages, "the measure of damages being the contract price agreed upon or its value." And third could "abandon the contract and sue the administrator in an action at law on *quantum meruit* and recover the value of her services" within the limits fixed by the contract.

Though nothing was said at the time the agreement was made about the payment of the debts of creditors of the estate and the expenses of administration; the parties clearly intended that at the death of Mrs. McConnell plaintiff as a reward for her services should step

into the shoes of her promisor and take her estate, subject to its legal burdens, in other words, receive the inheritance in lieu of a demand for compensation as a creditor. So construed, the contract not only called for the performance of services by plaintiff, the extent and value of which were at the time purely speculative and contingent, but provided a consideration of value equally as indefinite and speculative. True plaintiff could know of the character and value of the property then owned by her promisor, but this property had been accumulated for the use of old age and was being consumed and plaintiff could not know the amount and value thereof that would remain at the death of Mrs. McConnell, nor could she know how well it would compensate her for the services she might be compelled to perform.

Notwithstanding this indefiniteness and despite the statute of frauds and the statute requiring all wills to be in writing (Revised Statutes 1899, sec. 4604), plaintiff would have been entitled to the specific enforcement of the parol contract had she brought her action in equity against the heirs. [Wright v. Tinsley, 30 Mo. 389; Gupton v. Gupton, 47 Mo. 37; Sutton v. Hayden, 62 Mo. 101; Sharkey v. McDermott, 91 Mo. 647; Teats v. Flanders, 118 Mo. 660; Healey v. Simpson, 113 Mo. 340; Alexander v. Alexander, 150 Mo. 579; Steele v. Steele, 161 Mo. 566; McElvain v. McElvain, 171 Mo. 244.] The basic principle of these decisions is thus expressed in Gupton v. Gupton, supra: "Contracts like the one under consideration have been before the courts and have uniformly been held to be valid when partially performed and when the refusal to complete them would work a fraud upon the other party." As was observed in Sharkey v. McDermott, supra: "In this class of cases, it is impossible to estimate by any pecuniary standard, the value to the recipient of the services rendered and such services are not designed or intended to be so measured. The contract is originally so created that the considera-

tion which the party receives cannot be returned and after the performance of the services it is beyond the power of the party and of the courts to restore the plaintiff in such cases to the situation in which he was before the contract was made." The absence of any standard at law by which the damages sustained in such cases may be adequately measured is thus given as the reason for the equitable rule by which specific performance may be decreed, and the authority of equity thus practically to decree and enforce a will not executed in the form and manner prescribed by statute, may be found in the principle that equity will treat as done that which the parties intended should be done.

But these principles being purely equitable cannot be applied in actions at law and have their existence solely from the insufficiency of legal standards to afford adequate relief. A parol agreement to make a will can no more serve at law as a testamentary disposition than could a parol will itself and where as in the present case such agreement is the sole consideration provided for the services to be rendered, it cannot be enforced in an action at law and may only be there used to limit the amount the plaintiff may recover as the reasonable value of her services. Such in effect was the view entertained by this court in the case of Koch v. Hebel, 32 Mo. App. 103, and in Walker v. Gay's Estate, 73 Mo. App. 89. In those cases the plaintiffs sued to recover on *quantum meruit*. We sustained the actions holding that a recovery could be had in that form of action for the reasonable value of the services not exceeding however the value of the property the promisor had agreed to give as a consideration therefor.

In the present case we know of no reason that will prevent the maintenance of the action as one at law for the recovery of the reasonable value of plaintiff's services. Her performance of the contract takes it out of the statute of frauds in a suit at law as well as in

Hall v. Getman.

equity and although at law she cannot recover the compensation provided in the contract, she may recover on *quantum meruit*. It follows from what has been said that two remedies were available to plaintiff. She could have sued the heirs in equity for the specific performance of the contract, or she could sue the administrator at law for the reasonable value of her services, her recovery being limited to the value of the property promised her in the contract.

To permit plaintiff in the law action to recover the estimated value of the property mentioned in the contract would be not only a flagrant violation of the statute requiring wills to be in writing, but it would be putting into an unalterable judgment and thus making fixed and definite that which under the terms of the contract is in its very nature indefinite and contingent. The contract contemplated that the demands of creditors of all classes should be satisfied in full out of the estate before plaintiff should receive anything, but if plaintiff is permitted to recover a money judgment for the estimated value of that residue and thereby become a creditor of the estate, it is not only possible but very likely that her claim added to the other proven demands would exceed the amount of the proceeds actually derived from the administration of the estate and other creditors being compelled to prorate with her would receive less than full payment and thus plaintiff would obtain more than the contract entitled her to receive. The opinion of witnesses and the judgment of the jury may easily err in estimating the value of the property and until the time for proving demands against the estate has expired, the witnesses may err in their statement of the amount and character of the indebtedness of the estate. To impose any part of the burden of such mistakes on the creditors would be in direct violation of the terms of the contract and for that reason, if for no other, should not be permitted.

The insufficiency of the rules controlling the measurement of damages in actions at law for breach of con·tract to accurately estimate the damages sustained in cases of this character is reason enough for compelling plaintiff to resort to equity if she would reap the full fruits of her contract and constitutes an important difference between this case and Clark v. Cordry, 69 Mo. App. 6, where the promisor agreed upon a definite sum as the consideration the promisee was to receive for his services. But there the action being at law the recovery should have been restricted to the reasonable value of the services although the agreement provided that the promisor should bequeath the promisee a definite sum and to the extent that the views therein expressed are at variance with those we now entertain that case is disapproved.

The learned trial judge committed error in fixing the measure of damages at the value of the property promised regardless of the value of the services rendered and properly sustained the motion for a new trial. The judgment is affirmed. All concur.