251 S.W.2d 1 (1952)
MUENCH
v.
SOUTH SIDE NATIONAL BANK.
No. 41942.
Supreme Court of Missouri, Division No. 2.
July 14, 1952.
Motion for Rehearing or to Transfer to Denied September 8, 1952.
*2 Harold O. Piening, Edwin D. Franey, Hay & Flanagan, St. Louis, for appellant.
Edward C. Schneider, Harry A. Frank, St. Louis, for respondent.
Motion for Rehearing or to Transfer to Court en Banc Denied September 8, 1952.
VANDEVENTER, Judge.
This is an action against an administrator for compensation for services alleged to have been rendered deceased during his lifetime. It was tried to a jury with a verdict for plaintiff for $20,435.99. The trial court sustained the motion for new trial believing it had committed error in giving Instruction No. I. From the granting of the new trial, plaintiff appealed.
Plaintiff's petition alleged that Frederick Joern, a resident of St. Louis County, died on or about the 13th day of April, 1948, and that the defendant, South Side National Bank, a corporation, was duly appointed administrator of his estate. It was then alleged that from May, 1931 to April, 1948, plaintiff "at the special instance and request of Frederick Joern" rendered certain services, describing them, "for all of *3 which services the said Frederick Joern, deceased, promised and agreed to pay plaintiff." It was also alleged that the services were reasonably worth $3 per day, or a total of $18,564 for a period of sixteen years, eleven months and 13 days, and that no part of said sum had been paid. Judgment was prayed for that amount with interest from the 13th day of April, 1948.
The answer denied the request for, or rendition of, the services, and the promise to pay for them.
Plaintiff's evidence showed that the services, which will be hereafter more particularly described, were rendered from May 16, 1931, to April 13, 1948, by plaintiff, at the request of deceased, that she did shopping for him, prepared many meals for him, did his sewing, washing and ironing as needed, took him to physicians for treatment from time to time and to other places as requested by deceased, consulted with his lawyer relative to certain condemnation proceedings pending against deceased, for all of which no compensation had been received. The plaintiff was a grand niece of the deceased, and from May 16, 1931 to August 6, 1941, lived four or five miles from him. After the last named date she lived near him but they were not members of the same household.
Instruction No. I given at the request of plaintiff, as modified by the court, was as follows:
"The Court instructs the jury that if you find and believe from the evidence that the plaintiff Edna Muench, at the special instance and request of the deceased Frederick Joern, from about May, 1931, to April 13, 1948, rendered services to the deceased (describing services) and if you further find that at the time of the rendition of such services, if any, plaintiff intended to have compensation for such services, and that deceased promised and agreed to pay plaintiff, then the jury are authorized to find that there was a promise to pay plaintiff the reasonable value for such services; and if you find that there was such an agreement and promise, then your verdict should be for plaintiff, in such sum as you may believe from the evidence such services are reasonably worth, not to exceed $18,564.00, together with interest thereon at the rate of 6% per annum from the 13th day of April, 1948."
After the verdict and judgment, motion for new trial was filed, alleging, among other things, that Instruction No. I was erroneous and this motion was sustained;
"Because the Court erred in giving Instruction No. I requested by the plaintiff, modified by the Court and given by the Court as modified."
The appellant contends that the court did not err in giving Instruction No. I. The respondent contends that it was erroneous (a) in permitting the jury to find there was a promise to pay plaintiff the reasonable value of her services when an express promise was pleaded and the evidence showed that as compensation she was to have his estate at his death, (b) that it permits a suit on one cause of action and recovery on another and different cause of action; (c) that it fails to require a finding as to the relationship of the parties and, (d) that it failed to direct the jury to find the amount and extent of the services, the number of days and length of time during which the services were rendered.
In a memorandum opinion handed down at the time the motion for new trial was sustained, the trial court expressed the belief that the verdict was for an excessive amount, and that there was "no substantial evidence to support a finding of daily services rendered the deceased by the plaintiff before she moved to his neighborhood." This feature we will discuss later.
As to the specific contract for services, plaintiff's evidence showed that deceased requested her to render the services for which she claims compensation and told her that as compensation for those services, he would leave her all his property at his death. No will was found after his death and his estate is being administered as if he had died intestate. Neither did he deed his property to plaintiff. There is some evidence on the part of defendant that deceased had stated that plaintiff wanted him to execute a will but he did not intend to *4 do so but would die intestate and let his heirs fight over his estate.
After the failure of deceased to keep his promise to compensate for the services by leaving his property to the plaintiff, she had three remedies. She could (1) bring a suit in equity for specific performance, and if her contentions were sustained, would receive the property owned at his death less expenses of administration and provable debts against the estate, (2) maintain (under certain circumstances) a suit for damages for breach of contract, or (3) abandon the contract and sue in quantum meruit for the reasonable value of those services. Joseph v. Joseph, Mo.App., 164 S.W.2d 145; Blackwell v. De Arment's Estate, Mo.App., 300 S.W. 1035; 34 C.J.S., Executors and Administrators, § 373, page 119.
It seems to be conceded by everyone that there could be no recovery on a suit for damages for breach of the contract because of the Statute of Wills, the Statute of Frauds and the impossibility of proving the net value of the estate to which amount plaintiff's recovery would be limited in that kind of a suit. Hall v. Getman, 121 Mo. App. 630, 97 S.W. 607.
Where services are rendered by a person not standing in a family relationship, the presumption is that the services were not gratuitous. Murphy v. Pfeifer, Mo. App., 105 S.W.2d 39; 34 C.J.S., Executors and Administrators, § 784(b), page 853; Limbaugh's Missouri Practice, Vol. 2, Sec. 785.
The law implies a promise to pay their reasonable value after proof that the services were requested and actually rendered with expectation of compensation. Thomas v. Fitzgerald's Estate, Mo.App., 297 S.W. 425; Patrick v. Crank, Mo.App., 110 S.W.2d 381; 34 C.J.S., Executors and Administrators, § 373, page 119.
The failure of the deceased to keep his contract, by leaving the property to the plaintiff, forced her to follow one or the other of the methods above enumerated to procure compensation. She chose the third, a suit in quantum meruit. In this case, the answer of the administrator denies that there was any request for services, that any services were in fact rendered and that any promise was made to pay for them.
Plaintiff does not, nor is she required to, plead or prove the specific promise to pay for the services. She was only required to plead and prove that at his request she rendered the services, that they were worth the amount asked and the law then presumes that they were to be paid for. Patrick v. Crank, Mo.App., 110 S.W.2d 381; Warren v. Davis, Mo.App., 97 S.W.2d 159.
When plaintiff pleaded and proved a specific promise to pay for the services, and the jury was required to find a specific promise, she assumed a greater burden than the law required and the defendant could not complain of it. Henderson v. Dolas, Mo.Sup., 217 S.W.2d 554. She merely pleaded and proved and the jury was required to find that which the law would have otherwise implied.
Defendant does not plead the existence of a family relationship, giving rise to the presumption that the services were gratuitous, but denies everything. Such a defense is special and affirmative, is in the nature of confession and avoidance and should have been pleaded, if it were to be relied upon. Section 509.090 RSMo 1949, V.A.M.S.; In re Tally's Estate, 232 Iowa 280, 5 N.W.2d 584, 144 A.L.R. 859; Anno. 144 A.L.R. 864.
Neither does defendant's evidence show such a defense but rather that no services were in fact rendered. This case was not tried upon the theory that the services were rendered gratuitously by one standing in a family relationship, but that they were not rendered at all.
There is no evidence in the entire record that such a relationship existed. Plaintiff from 1929 to January 1931 was regularly employed at the J. C. Penney Company in St. Louis. She began working there when she was about 19 years of age. She was married September 29, 1930 to Roy Muench. A female child was born of this marriage, September 25, 1933. She lived four or five miles from deceased until August, 1941, (which was more than ten *5 years after the alleged agreement was made) when she and her husband built a house near him but never did she and her great-uncle live in the same household. It takes much more than the fact that she was the grand niece of deceased to establish the family relationship, even if that question were properly in this case. Patrick v. Crank, Mo.App., 110 S.W.2d 381.
Evidence of the express promise to pay and the agreed compensation, was admissible to show an intention on the part of the deceased to pay for the services, that plaintiff expected payment and the value the parties put upon them. Burns v. Kieley's Estate, 242 Mich. 668, 219 N.W. 743.
We do not think the petition can be construed as a suit on a special contract, or such a suit commingled with a suit for quantum meruit. See In re Hukreda's Estate (St. Louis Union Trust Co. v. Seketer), Mo.Sup., 172 S.W.2d 824. The fact that the petition alleges a promise to pay for the services does not prevent it from being an action in quantum meruit. Joern v. Bang, Mo.App., 200 S.W. 737; In re Stein's Estate, Mo.App., 177 S.W.2d 678; Tock v. Tock, Mo.App., 120 S.W.2d 169.
Is plaintiff's recovery limited to the net value of the estate? We do not think so. The plaintiff was compelled to bring the suit because of default by deceased. In that matter she was innocent of any wrongdoing. She abandoned the contract and sued in quantum meruit, for the reasonable value of her services. She claims she had fully performed. While the fault was not hers, yet, if her recovery had been for less than the value of the net estate, she would have been bound by the verdict. To hold, under the circumstances in this case, that she was limited in her recovery to the estate's net value would be to permit the estate to profit by the wrong of the deceased. Where deceased failed to comply with his agreement, although he received services, the defendant should not be allowed to reap an advantage by relying on the parts favorable to it, while denying there was any promise by deceased to compensate by leaving plaintiff the net estate, or that any services were in fact rendered. Furthermore, the net value could not be computed until the estate was closed and it could not be closed until her claim was ascertained and disposed of. It would be just as difficult to prove the net value in a suit for quantum meruit as it would to prove it in a suit for damages for breach of contract. See In re Whitworth v. Monahan's Estate, Mo.App., 111 S.W.2d 931.
It is also argued that not to limit recovery to the agreed price of the net estate would be unfair to other creditors. When the contract was abandoned by plaintiff, which was done in this case, and she sued for the reasonable value of the services alleged to have been rendered, she was entitled to recover their proven value. When a final judgment is procured and presented to the Probate Court for classification, plaintiff becomes a creditor of the estate and stands on an equal footing with other creditors in that class. This is a demand established in the Circuit Court as allowed by Section 464.080 RSMo 1949, V.A.M.S. Such a judgment shall be filed in the Probate Court and by Section 464.100 RSMo 1949, V.A.M.S., this judgment must be properly classified and satisfied according to such classification. State ex rel. Lefholz v. McCracken, 231 Mo.App. 870, 95 S.W.2d 1239. By Section 464.130 RS Mo 1949, V.A.M.S., the claims in each class "shall be paid in proportion to their amounts." There is no reason, that we can see, why an innocent creditor should be compelled to sue for the reasonable value of her services and when her claim is established, take a position subordinate to other creditors in the same class.
Instruction No. I was not erroneous by failure to limit recovery to the net value of the estate.
The evidence shows that the deceased owned about 36 acres of land in 1931, which he valued at $1000 per acre. About 1945, when the State was attempting to take some of his land for highway purposes, he refused $3500 for two acres. It is a matter of common knowledge that land values have tremendously increased between 1930 and 1948, so the 34 acres remaining *6 after the acquisition of the right of way by the State undoubtedly would be worth far in excess of $34,000. In addition to this, $1100 in currency was found in the barn after Mr. Joern died and other property was sold including some antiques. There is no evidence of any demands against the estate or other obligations of any amount, except a suit by plaintiff's husband, which appears to be a claim for exactly the same period of time at $3 per day and for part of the same services involved in this controversy. All the evidence tends to establish that deceased did not contract debts but paid cash.
There is no showing that the judgment as rendered could work an injustice upon other creditors, or that the estate would not satisfy all demands and costs of administration. This judgment can only be paid out of the assets of the estate after the costs of administration and demands in a higher class and if there were not sufficient funds, it would be reduced in the same proportion as other demands in its class.
In Hall v. Getman, 121 Mo.App. 630, 97 S.W. 607, 609, the evidence was very similar to the case before us except the suit was for damages for breach of contract and not for the reasonable value of the services. The evidence there tended to show that the net value of the estate would be $3,000. In its instruction, the court limited the verdict to the value of the property which decedent agreed to leave by will "`not exceeding the sum of $3,000, even though you may further believe that the reasonable value of such services of plaintiff for the whole period for which she claims will not equal such amount.'" A motion for new trial was sustained on the ground "`that the court erred in giving plaintiff's instructions, and, upon the whole record and the law and the evidence in the case, plaintiff is not entitled to recover in this form of action'". The trial court was sustained by the Court of Appeals which said, loc. cit. 97 S.W. 610:
"The learned trial judge committed error in fixing the measure of damages at the value of the property promised regardless of the value of the services rendered, and properly sustained the motion for a new trial."
In its discussion the Court of Appeals said that if plaintiff had sued the administrator in quantum meruit she could have recovered the reasonable value of her services, "her recovery being limited to the value of the property promised her in the contract." This was clearly obiter dictum as no such suit or question was before the court.
"An obiter dictum, in the language of the law, is a gratuitous opinionan individual impertinencewhich, whether it be wise or foolish, right or wrong, bindeth none, not even the lips that utter it." Hart v. Stribling, 25 Fla. 433, 435, 6 So. 455. Or as classically expressed by Judge Caskie Collet, it is "`That useless chatter of judges, indulged in for reasons known only to them, to be printed at public expense.'" United States v. Certain Land in City of St. Louis, D.C., 29 F.Supp. 92, loc. cit. 95.
There are a number of cases that have been cited and considered, commencing with Hall v. Getman, supra, which indicate that plaintiff's recovery is limited to the net value of the estate. Some of these cases are suits for damages for breach of contract and are not in point here. Some, by dictum, follow the language used in Hall v. Getman, but in none of them are the facts the same as here and in none of them were the statutes, above referred to, considered. None of them carefully analyze or fully discuss the reasoning of such a rule.
It was held in Hutchinson v. Swope, Mo. App., 256 S.W. 134, 135, that:
"The measure of damages in such a suit (quantum meruit) is not the compensation fixed by the contract, but the reasonable value of the services rendered."
See also: Cozad v. Elam, 115 Mo.App. 136, 91 S.W. 434. The case of State ex rel. Shaw v. Baker, 32 Mo.App. 98, is hereby overruled.
Did Instruction No. I sufficiently require the jury to find the number of days and length of time during which the services were rendered? The petition states *7 that the services were rendered "from May, 1931 to April 13, 1948" and they were reasonably worth $3.00 per day or a total of $18,564.00 for "sixteen years, eleven months and thirteen days; * * *." The instruction limited the recovery from "about May, 1931, to April 13, 1948 * * *," but "not to exceed $18,564.00, together with interest thereon at the rate of 6% per annum from the 13th day of April, 1948." The evidence fixed the absolute date of the agreement and beginning of the services as May 16, 1931.
This instruction is indefinite in permitting the jury to allow recovery from "about May, 1931" and in limiting her recovery to $18,564, which is $33 more than plaintiff's evidence shows could possibly have been due at $3 per day. Compare Carroll v. Young, Mo.App. 267 S.W. 436. This phraseology cannot be recommended or approved, but it is not of such grave character, in this case, but that its harmful effects, if any, can be cured by requiring a remittitur.
Respondent complains of the refusal of the trial court to give Instructions A and C. These instructions were based upon the theory that a family relationship existed between plaintiff and deceased. From what has been said, it is clear that the trial court did not commit error in refusing them.
Plaintiff's Instruction No. II informed the jury that plaintiff was not a competent witness because the other party to the contract was dead. It is inferred that this instruction would have been all right if the plaintiff had not been used as a witness. Every objection to plaintiff's testimony was sustained by the court except when she was asked who was present when the deceased visited her home in May, 1931. Her reply was that her husband and her mother were present. While this testimony is dangerously close, the husband testified and stated that he was present and we will not hold, under the circumstances, that this ruling was error. It was not error to give Instruction No. II.
Respondent offered in evidence a petition filed in the circuit court, by the husband of plaintiff, seeking compensation for services rendered the deceased "from May, 1931 to April 13, 1948", which were alleged to be reasonably worth $3 per day, or a total of $18,564 for a "period of sixteen years, eleven months and thirteen days; * * *." This petition was read to the jury. No reason was given as to why it was being offered. At the close of the reading, upon the objection of plaintiff's attorney, it was excluded and to this exclusion, respondent excepted. It is now urged that the purpose of this offer was to impeach the testimony of plaintiff's husband by showing his interest in the case on trial. However, the record shows that when plaintiff's husband was testifying, he was, on cross-examination, asked if he had not filed such a claim in the sum of $18,564 and his reply was that he had. He further testified on cross-examination that the claim was still pending and that he was basing it on $3 per day for his services. Whether the petition was admitted was largely within the discretion of the trial court and the evidence having been brought out on crossexamination relative to it, its exclusion would not justify a reversal. We cannot say that the trial court abused its discretion. This evidence was merely cumulative, had already been shown by plaintiff's husband and was not disputed.
Neither do we think that the testimony of Margaret Schmidt and Ethel Allen, a practical nurse with 22 years experience, was error, when they testified to the value of plaintiff's services. Defendant's objections to the testimony of Margaret Schmidt were sustained. Defendant objected to the hypothetical question asked witness Allen and was permitted to add such facts as were claimed to have been omitted and upon his revision, the witness testified as to the value of the services without objection. All other objections were sustained.
The serious question in this case is the excessiveness of the verdict. It is urged that it is so excessive that it shows bias and prejudice on the part of the jury. Plaintiff's evidence attempted to show that there was continuous service from May 16, 1931 until April 13, 1948, which was 6177 days. The period when plaintiff lived four or five miles from deceased, or from May 16, 1931 to August 6, 1941 was 3735 days. *8 From the latter date until the death of Mr. Joern was a period of 2442 days or a total of 6177. Plaintiff's petition alleged that such services were worth $3 per day. Consequently, it would have amounted to $18,531 for the entire period. However, the jury returned a verdict for $18,564 with interest from decedent's death or for $33 more than plaintiff asked for. They allowed her $3 per day for each and every day of every week for sixteen years, eleven months and thirteen days and an additional $33. For more than ten years of this period, plaintiff lived four or five miles from deceased, could not drive a car until 1940, and the evidence was that her husband or his father drove her to deceased's home in their cars. Yet the evidence shows that her husband was regularly employed through all the period of the alleged services, at the Laclede Steel Company in St. Louis, his hours being from 8:30 A. M. to 5:30 P. M. During this period, plaintiff became pregnant and gave birth to a child. At one time the deceased was confined to a hospital for a period of from ten days to two weeks and just before his death was in the hospital five or six days. Are we to believe that the winter's snow, the spring storms or the heat of summer in no wise interrupted the continuity of her daily services? Her evidence is not at all convincing that on each and every day of each and every week over the period of from May 16, 1931 to August 6, 1941, she was in daily attendance about the services of deceased. Her husband testified that many times she only stayed there "an hour, two hours or three hours." She had her own home and child to care for. Neither are we convinced that the deceased required daily services. He had his own home, horses and farming machinery, cultivated part of his farm, cooked at least some of his meals, made jelly, twenty-five gallons at a time, and apparently had no more infirmities than most men of his age, if as many.
We think the sum of $12,000 will amply reward the plaintiff for her proven services and if she will, within fifteen days of the time this opinion is handed down, file a remittitur in this court in the sum of $8,435.99, we will reverse the judgment of the trial court in sustaining the motion for new trial, order a judgment to be rendered for $12,000 and upon this sum, she will be entitled to interest at the rate of 6% per annum from the 3d day of November, 1948. Otherwise the judgment of the trial court will be affirmed. The date of the appointment of the administrator does not appear in the record but this case was filed within six months and nineteen days of Mr. Joern's death, and in assessing the costs, Section 464.090 RSMo 1949, V.A.M.S., should not be overlooked.
All concur.
WM. L. VANDEVENTER, J., Springfield Court of Appeals, sitting as Special Judge by transfer order.