In the ESTATE OF Genelle
MOORE, Deceased.

Jim R. LOONEY, Claimant–Respondent.

v.

Ernest DAVIS, Personal Representative
and Heir of Decedent,
Respondent–Appellant.

No. 17028.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 18, 1991.

Thomas W. Cline, Gainesville, for respondent-appellant.

Daniel P. Wade, Ava, Randy R. Cowherd, Schroff, Glass & Newberry, Springfield, for claimant-respondent.

SHRUM, Judge.

Personal representative of the estate of decedent Genelle Moore (estate) appeals

from a judgment for $20,000 in favor of Jim Looney (claimant) on his claim for services rendered to decedent during her lifetime. We affirm.

We view the evidence in the light most favorable to the trial court's judgment. *Trenton Trust Co. v. Western Surety Co.*, 599 S.W.2d 481, 483 (Mo.1980). Claimant began providing services for decedent in 1978 or 1979 and continued until her death in 1988. His work included caring for cattle, chickens, and pets; repairing fence; yard work; maintenance on the water line from a spring to the house; clearing a creek to prevent flooding; cutting, hauling, splitting, and stacking fire wood; and providing decedent with transportation to do laundry, shopping, and go to the doctor. When decedent was in the hospital, claimant took care of her house on a daily basis.

Claimant was at decedent's house daily during the 10–year period before her death. During the year immediately prior to decedent's death, when she was in ill health, claimant was at her home more than once a day. During that year, in addition to his usual work, claimant built fires, took her lunch, and brought her ice, which she needed because of her illness.

Claimant testified that $20,000 to $25,000 was a fair and reasonable amount for the work he had done for decedent over the years. He testified that although he was never paid for any of his work, he and decedent had discussed that he was to receive payment, it was his understanding he would be paid when she died, and decedent had said she would divide her estate four ways among her two sisters, her brother, and claimant. Claimant and decedent's conversations about the matter first occurred six to seven years before decedent died. Claimant said he would not have performed all the work over the years if decedent had not indicated he would be paid after her death.

The testimony of decedent's sisters, Rilla North and Rosezelle Boyer, corroborated claimant's testimony about the work he performed and decedent's repeated statements she intended claimant to have one-fourth of her estate at her death for his

work. In Rilla's opinion, $20,000 was reasonable pay for claimant's work; Rosezelle said $20,000 to $25,000 was reasonable. Both sisters testified they were aware any award to claimant from the estate would reduce their individual shares of the estate. Testimony of Rosezelle's son Joe Boyer, and Lorie Peterson, a neighbor who had lived briefly with decedent, also corroborated claimant's testimony about the work he had done.

There was evidence that claimant and decedent had a close personal relationship, and many times when claimant went to decedent's house it was for companionship and not to perform services. Claimant never asked decedent for pay for his work. The estate's defense was grounded on testimony that other people performed much of the work that was done for decedent, claimant visited decedent for social reasons rather than to perform services for her, claimant was paid for any work he did for decedent, and when claimant was at decedent's home, he spent the time "laying around, sitting, talking."

■■■ This court's scope of review of a court-tried case is described in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The trial court may believe all, part, or none of the testimony of various witnesses. On appeal we give due regard to the trial court's opportunity to judge the credibility of the witnesses. *Osborne v. Boatmen's Nat'l. Bank*, 732 S.W.2d 242, 245 (Mo.App. 1987).

In Point I the estate alleges that, because the evidence about the personal relationship of decedent and claimant "required the [Trial] Court to presume claimant's services were rendered gratuitously ...," the judgment was against the weight of the evidence. Although the estate does not raise the issue in its point relied on and argues it only indirectly, the estate appears to contend claimant's evidence was insufficient to overcome the presumption of gratuitous services.

■■ Where a claimant and the decedent did not have a family relationship, the law presumes an intent by the decedent to pay

for services rendered; the burden of proving the services were rendered gratuitously is on the estate. *Buchweiser v. Estate of Laberer*, 695 S.W.2d 125, 128 (Mo. banc 1985). This presumption does not exist in all non-family relationship cases, however. If the personal relationship of claimant and decedent would lead a reasonable person to believe the services were rendered gratuitously, the law presumes payment was not intended, and the burden of overcoming the presumption is on the claimant. *Id.; Taylor v. Currie's Estate*, 83 S.W.2d 194, 197 (Mo.App.1935). To rebut the presumption described in *Buchweiser* and *Taylor*, claimant must, in addition to proving rendition of the services, show by clear and convincing evidence the existence of an agreement that the services would be paid for. *Osborne*, 732 S.W.2d at 245.

■ The record in this case indicates claimant and decedent had a close personal non-familial relationship similar to those described in *Buchweiser* and *Taylor*, and a reasonable person would believe claimant rendered services to decedent gratuitously. However, claimant provided clear and convincing evidence of an agreement that he be paid. · He testified that he and decedent discussed that he would be paid from decedent's estate when she died. Moreover, decedent's two sisters, both of whom were aware any money paid claimant would reduce their shares of decedent's estate, testified about decedent's intent that claimant be paid. Claimant presented sufficient evidence to overcome the presumption that his services were gratuitous. The estate's Point I is rejected.

In Point II the estate alleges there was no substantial evidence to support the amount of the judgment because claimant presented no evidence of the value of the estate. Evidence of value is essential, the estate argues, because claimant's evidence of mutual understanding was that he was to be paid one-fourth of the estate and any recovery claimant receives cannot exceed the contract amount.[1]

■ Following the death of decedent, when he did not receive one-fourth of her estate, claimant had three remedies. He could sue for specific performance, maintain (under certain circumstances) a suit for damages for breach of contract, or abandon the contract and sue in quantum meruit for the reasonable value of his services. *Muench v. South Side National Bank*, 251 S.W.2d 1, 4 (Mo.1952). Claimant elected to base his recovery on a quantum meruit theory.[2]

■ In many Missouri cases, courts say that recovery under a quantum meruit theory cannot exceed the contract amount.[3] However, courts have criticized indiscriminate application of the rule and have created exceptions, particularly in cases involving claims against estates. For example, in *Muench*, the claimant's evidence was that the deceased had specifically contracted to compensate her for her services by leaving her all his property at his death. Our Supreme Court declined to limit the claimant's recovery to the contract amount (the net value of the estate), noting she had "abandoned the contract and sued in quantum meruit, for the reasonable value of her services." 251 S.W.2d at 5.[4]

1. In support of its assertion that claimant's recovery cannot exceed the contract amount, the estate cites the following cases: *Boyd v. Margolin*, 421 S.W.2d 761, 767–68 (Mo.1967); *Martin v. Mercantile Trust*, 293 S.W.2d 319, 328 (Mo. 1956); *Cross v. Robinson*, 281 S.W.2d 22, 26 (Mo.App.1955); and *Waddington v. Wick*, 652 S.W.2d 147, 149 (Mo.App.1983). *See also Bash v. B.C. Const. Co.*, 780 S.W.2d 697, 698 (Mo.App. 1989). None of these cases involves a quantum meruit claim asserted by a claimant against an estate for services rendered decedent.

2. At trial, claimant offered evidence that decedent promised him one-fourth of her estate for his services. This evidence was admissible to show decedent's intent to pay for his services, his expectation of payment, and the value the parties put upon the services rendered. *Muench*, 251 S.W.2d at 5. It is clear from the trial transcript that claimant offered testimony about decedent's desire that he receive one-fourth of her estate as evidence of her intent to pay and his expectation of payment.

3. *See, e.g.,* cases cited *supra* note 1.

4. In *Muench*, the court pointed out that many of the cases which indicate that a claimant's quantum meruit recovery is limited to the contract amount are cases which were not in point or

In *Cooper v. Norman,* 424 S.W.2d 347 (Mo.App.1967), a case involving a claim against a former employer for accounting services, the defendant employer claimed the trial court erred because jury instructions did not limit the quantum meruit recovery to the "agreed price." *Id.* at 349. In rejecting that allegation of trial court error, the court of appeals said:

> To what amount could he [the trial judge] have limited the recovery by instructions when no definite or determinable compensation was shown by the pleadings or the evidence? The rule placing a restrictive limitation on the recovery allowable in a quantum meruit action is applicable, of necessity, only in those instances where the action had its inception in a contract where the compensation was fixed or was susceptible of being accurately ascertained.

*Id.* at 350. As was the case in *Muench,* the appropriate recovery for claimant was the reasonable value of his services to decedent. When claimant and decedent discussed that he would be paid for his services, his compensation was not fixed and could not be accurately ascertained. Thus, under the rule of *Cooper,* his recovery in quantum meruit is not limited to an amount equal to one-fourth of the value of decedent's estate. Point II is rejected.

Judgment affirmed.

PARRISH, P.J., and HOGAN, J., concur.

cases where such language was clearly obiter dictum. The Supreme Court noted that in none of the cases did the court carefully analyze or fully discuss the reasoning of such a general rule, particularly as it applies to services rendered a decedent in return for a share of an estate. 251 S.W.2d at 6.