Robert E. Steele, Jr., Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., John R. Watson, Asst. Atty. Gen., Jefferson City, for respondent.

Before REINHARD, P.J., and CRIST and CRAHAN, JJ.

## ORDER

PER CURIAM.

Defendant appeals from his conviction for second degree robbery, § 569.030, RSMo 1986. He was sentenced by the court as a prior and persistent offender to a twelve year prison term. He also appeals the denial of his Rule 29.15 motion for postconviction relief without an evidentiary hearing. We affirm.

We have reviewed the record and find the claims of error are without merit; the judgment of the motion court is based on findings of fact that are not clearly erroneous. An opinion would have no precedential value nor serve any jurisprudential purpose. The parties have been furnished with a memorandum for their information only, setting forth the reasons for this order affirming the judgment pursuant to Rules 30.25(b) and 84.16(b).

**Junior Elmer REED and Delores Ann Reed, Plaintiffs–Respondents,**

v.

**Eldora REBERRY, Defendant–Appellant.**

No. 19222.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 4, 1994.

Scott B. Stinson, Mountain Grove, for defendant-appellant.

Brad D. Eidson, Houston, for plaintiffs-respondents.

SHRUM, Judge.

In this quantum meruit case, the trial court ordered Eldora Reberry (Defendant) to pay $30,000 to Junior Elmer Reed and Delores Ann Reed, his wife, (Plaintiffs) for services performed by them for Defendant and her late husband, Raymond Reberry. Defendant appeals. We affirm.

## FACTS

Plaintiffs are not related to Defendant or her late husband, Raymond. Initially their acquaintanceship was as neighbors and friends. In 1986, Defendant and her husband were living on their 80-acre farm in Wright County, Missouri, when they proposed that Plaintiffs "take care of them in return for their property." At trial, Plaintiff Delores Reed testified that the Reberrys' farm was their primary asset and the Reber-rys specifically discussed it as part of what Plaintiffs were to receive for their services.

Plaintiffs agreed to the Reberrys' proposal and as part of the arrangement, they bought a mobile home and moved it to the Reberrys' 80-acre farm so that some member of Plaintiffs' family would constantly be available to provide care and assistance as agreed.

In January 1988, Raymond Reberry suffered a stroke that rendered him bedfast, incontinent, and in need of constant care. Delores Reed then stopped working at a nursing home and undertook the full-time care of Raymond Reberry at his home, a service that she performed with the aid of her family members until his death on May 29, 1989.

After Mr. Reberry's death, less was required of Plaintiffs because Defendant was healthy and active. However, Plaintiffs continued as agreed to live on the farm, assist and care for Defendant when needed, and provide her companionship. However, in October 1992, after a week's visit with her niece, Defendant moved away.

Plaintiffs then received a letter from Defendant's attorney, dated November 5, 1992, telling them that Defendant had "moved her personal residence to Willard, Missouri and has decided to sell her real estate ... (on which you are now residing)." Regarding their agreement, Defendant's lawyer asserted that Plaintiffs were "to take care of Mr. and Mrs. Reberry's physical needs and also take care of the real estate, and in exchange [Plaintiffs] would be allowed to live there rent free." He charged that Plaintiffs had breached their agreement by not providing her total care and not caring for the farm, thus entitling her to possession of the property. Continuing, Defendant's lawyer ordered Plaintiffs to remove their mobile home and belongings from Defendant's farm "as soon as possible" and told them electric service would be shut off on November 25, 1992. Accompanying the letter was a sixty-day eviction notice. Delores Reed testified that she and her husband were never allowed further contact with Defendant after she left her farm in October 1992.

Plaintiffs filed a two-count suit against Defendant, Count I for money damages on a quantum meruit theory and Count II for specific performance regarding the real estate. In her amended answer, Defendant alleged an oral "contract to make a will" in which she promised to will Plaintiffs whatever she owned at her death in return for their services. She further alleged that she had fulfilled her obligation by making a will containing such provisions in 1988, and, accordingly, Plaintiffs were not now entitled to payment because they had agreed to forego payment until Defendant died. By counterclaim, Defendant sought possession of the farm and damages based on unlawful detainer theory.

The trial court awarded Plaintiffs $30,000 on their quantum meruit count, refused to decree specific performance, and denied Defendant's counterclaim for unlawful detainer. Defendant appeals from that part of the judgment in which the trial court awarded damages. Plaintiffs do not appeal.

## STANDARD OF REVIEW

■ Our review of a court-tried case is governed by Rule 73.01 as interpreted in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). Thus, we will affirm the judgment of the trial court unless there is no evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32[1]. The trial court may believe all, part, or none of the testimony of various witnesses. *Dukes v. Dukes*, 859 S.W.2d 264, 268[4] (Mo.App.1993). On appeal we give due regard to the trial court's opportunity to judge the credibility of the witnesses. *Estate of Moore*, 802 S.W.2d 192, 194[2] (Mo.App.1991). All fact issues without specific findings in the court's judgment "shall be considered as having been found in accordance with the result reached," Rule 73.01(a)(3), and its judgment should be affirmed if the result was correct on any tenable basis. *Brown v. Mercantile Bank of Poplar Bluff*, 820 S.W.2d 327, 334[2] (Mo. App.1991).

## DISCUSSION AND DECISION

In each of her three points relied on, Defendant prefaces her assignment of error with the proposition quoted in italics, thusly:

"I. Where *the evidence established an express contract between the parties under which plaintiffs rendered services to defendant in exchange for defendant's promise to make a will to plaintiffs*, the trial court erred in granting ... a money judgment based on quantum meruit while defendant was still alive, because plaintiffs' cause of action will not begin to accrue until the death of defendant.

". . . .

"II. Where *the evidence established an express contract between the parties whereby defendant made a will to plaintiffs in exchange for personal services rendered by plaintiffs*, the court erred in granting quantum meruit judgment to ... plaintiffs during defendant's lifetime, because the terms of the implied promise found by the trial court to exist were in direct conflict with the terms of the express contract alleged and proved, in that it was specifically agreed that defendant would never be required to pay monies to plaintiffs during her lifetime. . . .

". . . .

"III. Where *the evidence established an express contract between the parties under which defendant agreed to make a will to plaintiffs in exchange for plaintiffs' promise to render services and care for defendant for the rest of her life*, the trial court erred in granting quantum meruit judgment to plaintiffs while defendant was still alive, in that defendant's conduct in moving off her farm and listing it for sale did not constitute a breach or repudiation by defendant, thereby entitling plaintiffs to rescind the contract and sue for damages."

Before we separately discuss each claim of error, we observe that Defendant's premise about what "the evidence established" appears to be based solely on the portion of the record that best supports her arguments. The "express contract" as outlined by Defendant is not among the findings of the trial court. In its judgment the trial court never used the word "contract," nor did it classify the "oral agreement" as either an "express" or "implied" agreement. Its only mention of

a contract came via the phrase "oral agreement" in paragraph 11 of the judgment and the word "agreement" in paragraph 13. They read:

"11. Plaintiffs performed all of their obligations under the *oral agreement* with Defendant and did not breach said *agreement* with Defendant.

" . . . .

"13. Plaintiffs reside in a mobile home which they own and which is located on said real estate pursuant to their *agreement* with the Defendant." (Emphasis ours.)

Given the paucity of specific findings regarding the oral agreement, we examine the record to find whether Defendant's version of the agreement is the only one supported by the evidence. We conclude it is not.

There is ample evidence in the record to support findings that the oral agreement between the parties was more than what is claimed by Defendant. Findings supported by the evidence in this record include (1) Defendant and her husband promised the 80-acre farm, free of debt and probate claims, as a defined part of the total consideration that Plaintiffs were to be paid for their services, and (2) Plaintiffs were to perform their services at the farm to fulfill the Defendant's requirement that she stay on the farm, either in her house or Plaintiffs' house, until she died. Such findings are far different in their consequences than is Defendant's claim that her sole obligation was to make a will for whatever she might own at her death.

Evidence that supports the foregoing findings includes the following.

"Q. (to Delores Reed) Is it your position that [Defendant] shouldn't have the right to sell that farm?

A. I think that that farm is rightly ours considering that *it was told us that it would be ours for the services we provided and we provided those services.*

. . . .

Q. . . . [B]ut you discussed that didn't you, the fact she couldn't pay you. [Defendant] told you that, didn't she?

A. We discussed that no wages would be given us at that time and that *we would get the land* and her belongings in lieu of the wages for our things that we did for them when she passed away.

. . . .

Q. Mrs. Reed, at all times for six and a quarter years, any time there was ever a discussion about what you would receive at Mrs. Reberry's death, the farm was mentioned, wasn't it?

A. Yes, it was.

Q. The farm was always a part of the specific agreement about what you were to receive at their death?

A. Yes.

. . . .

Q. *That she wanted to stay on the farm until the date of her death?*

A. *Yes, she in one particular thing it was in her home or our home which meant the farm.*" (Emphasis ours.)

Plaintiffs placed in evidence exhibits 8 and 9, identified as documents handwritten by Defendant. They also placed in evidence exhibit 10, a beneficiary deed dated June 28, 1990, in which Defendant conveyed her farm to Plaintiffs. Other than exhibit "A," entitled "Revocation of Beneficiary Deed," Defendant offered no evidence.

Exhibit 8, written by Defendant after her husband's stroke but before his death, tends to confirm Delores Reed's testimony that Plaintiffs were to care for Defendant and her husband at the Reberry farm. In part it reads:

"To care for any and all of his needs and mine until our deaths *either in our house or theirs* . . . .

" . . . .

"I Eldora Reberry . . . in keeping with [my husband's] wishes . . . which was also my desire . . . that Junior Elmer Reed and his wife Delores Ann Reed take sole care of my husband, Raymond . . . if he lives longer than I."

Exhibit 9, identified as written by Defendant after her husband died, supports Plaintiffs' testimony that the farm was specific consideration that they were to receive under

the oral agreement. In pertinent part it reads:

"I would like to make a will that would not have to be probated and could be revoked. I would <u>not</u> revoke it as long as my wishes and requests are being or have been carried out.

"*Concerning my farm, I suppose there would have to be an understanding.* All I own except the farm will stay in my possession until after my death. Then <u>all</u> I own must go to Junior Elmer Reed and Delores Ann Reed as soon as is practicable and my just debts are paid after my death.

"For these gifts they must give me kind and loving care and see after me in sickness and in health the rest of my life.

. . . .

"I revoke all other wills and codicils made by me before this date.

/s/ Eldora J. Reberry"

(Emphasis added.)

Defendant gave exhibit 9 and the beneficiary deed to Plaintiffs. Delores Reed testified that the purpose of the deed was "[f]or [Defendant] to make sure and insure that we receive the land for our services that we had given to her was my understanding." She characterized the beneficiary deed as "[Defendant's] way of showing [Plaintiffs] that she was going to hold to her bargain and the land would be ours for now and then when she passed away the rest of her belongings would then have to be probated to belong to us." When asked about the "all I own phrase" in exhibit 9, Delores said she understood it to mean "all that was left excluding the farm would then become ours."

Finally, Junior Reed testified that Plaintiffs' agreement with Defendant dealt with the farm specifically, being part of the consideration for Plaintiffs' work and also the situs of their services to Defendant. He testified, "[I]n all of [our] discussions with Mr. and Mrs. Reberry ... the farm [was] mentioned as going to [Plaintiffs]." Continuing, he said, "[We were] required to care for her the rest of her life ... *on her farm.*" (Emphasis added.)

With the foregoing as findings imputable to the trial judge, we look initially at Defen-dant's Point III claim that, by moving off her farm and listing it for sale, Defendant did not repudiate the contract and thereby entitle Plaintiffs to rescind the contract and sue for damages. The trial court implicitly found otherwise, and, in view of the circumstances, we cannot disagree.

■ Missouri law recognizes the doctrine of anticipatory breach of a contract by repudiation. *Ewing v. Miller,* 335 S.W.2d 154, 158[6] (Mo.1960); *Wooten v. DeMean,* 788 S.W.2d 522, 526 (Mo.App.1990). " 'A party repudiates a contract by manifesting a positive intention not to perform. This manifestation may be by words or conduct.' " *Mar-Kay Plastics v. Alco Standard Corp.,* 825 S.W.2d 381, 384[2] (Mo.App.1992) (quoting *Gateway Aviation, Inc. v. Cessna Aircraft,* 577 S.W.2d 860, 862 (Mo.App.1978)).

■ Here, there was sufficient evidence for the trial court to find that Defendant manifested, by both her acts and words, a positive intention not to perform. There is ample evidence to support a finding that the farm, as the primary consideration to Plaintiffs, was the essence of the contract. Through her lawyer's letter, Defendant manifested her positive intent not to make the farm available as part of Plaintiffs' pay. She clearly communicated her intention to pay nothing for the services performed by Plaintiffs except for "free rent." Moreover, listing her farm for sale, serving a "Notice to Vacate" on Plaintiffs, and moving off the farm so Plaintiffs could not care for her at that location were acts that manifested Defendant's positive intent not to perform. Her statements and acts provide sufficient evidence for the trial court to conclude that Defendant would not make the farm available as part of the consideration per the contract and would not live on the farm thus preventing Plaintiffs from performing their obligation as agreed. Contrary to Defendant's argument, there is sufficient evidence here to support the trial court in finding an anticipatory breach by repudiation. *See Carmel v. Dieckmann,* 617 S.W.2d 459, 460–61[3] (Mo. App.1981). Point III is denied.

■ In Defendant's first point she contends that she performed her only contractu-

al obligation to Plaintiffs by signing a will in November 1988, in which Plaintiffs were named as her sole legatees and devisees.[1] She argues that because Plaintiffs agreed that their pay would come only after she dies, their claim for compensation cannot accrue until her death. We disagree.

Under the rule followed by a majority of the courts, including Missouri, if a promissor repudiates his obligation before the time for performance has arrived, the promisee then has the option to treat the agreement as broken and at once bring an action for recovery of his damages, e.g., on a quantum meruit theory, or treat the repudiation as inoperative and await the time when the agreement is to be performed and then hold the promissor for all the consequences of nonperformance. *Wahl v. Cunningham*, 320 Mo. 57, 6 S.W.2d 576, 580[1] (banc 1928); *Burch v. Union Life Insurance Company*, 319 S.W.2d 908, 912–13[5] (Mo.App.1959). *See* 17A C.J.S. *Contracts* § 472(1); 17A Am.Jur.2d *Contracts* § 582. Where the promised consideration is real estate to be paid at death, the promisee may maintain a suit for specific performance during the promissor's lifetime (subject to conditions). *See Gupton v. Gupton*, 47 Mo. 37 (1870); *Meyer v. Meyer*, 775 S.W.2d 561 (Mo.App.1989) (persons who provided care to landowners in exchange for landowners' promise to devise land prevailed in their suit for specific performance brought before landowner died).

Having earlier concluded that there was sufficient evidentiary basis to support a finding of Defendant's anticipatory breach by repudiation in October and November 1992, Plaintiffs had the option to treat the agreement as broken at that time and at once sue upon a quantum meruit theory to the extent that they had performed. *See Wahl*, 6 S.W.2d at 580[1]; *Burch*, 319 S.W.2d at 912–13[5]. "A cause of action accrues when the right to maintain a suit arises." *Brink v. Kansas City*, 358 Mo. 845, 217 S.W.2d 507, 509[1] (banc 1949). Point denied.[2]

■ Relying upon Missouri cases that say a party's recovery under quantum meruit cannot exceed the contract amount, Defendant contends in her second point that the trial court erred in adjudging recovery for Plaintiff on quantum meruit during Defendant's lifetime. She argues that quantum meruit was unavailable to Plaintiffs as a matter of law because of the possibility that the "dollar amount ... sought might exceed the ultimate value of the estate."[3] We disagree.

In many Missouri cases, courts say that recovery under a quantum meruit theory cannot exceed the contract amount.[4] Howev-

---

1. In her brief, Defendant insists she never revoked her 1988 will. However, that claim is neither supported nor refuted by the record. Although Delores Reed testified that in 1989, Defendant made "a second will" in which she left all she owned to Plaintiffs, Delores Reed never saw the second will, it was not placed in evidence, and Defendant offered no evidence concerning the contents or status of either her first or second will.

2. We do not ignore Defendant's case authorities, *Blackwell v. De Arment's Estate*, 300 S.W. 1035 (Mo.App.1928), *Balsano v. Madden*, 138 S.W.2d 660 (1940), *Mittendorf v. Koeller*, 145 S.W.2d 470 (Mo.App.1940), and *Reighley v. Fabricius' Estate*, 332 S.W.2d 76 (Mo.App.1960), but find them inapposite. There the issue was whether statutes of limitation barred claims made against estates by persons who worked for the decedents but were not paid at decedents' deaths by a will provision *as agreed*. The courts held no, that the statutes of limitation did not run until the decedents died "because the cause of action did not accrue" until that event. In those cases the claimants, whether obliged to or not, waited until

the time fixed for the performance of the agreement had passed and then sought to hold the deceaseds' estates for all of the consequences of nonperformance. Here, Plaintiffs did not wait, nor were they obliged to. *See Wahl*, 6 S.W.2d at 580[1].

3. In support of her assertion that Plaintiffs' recovery cannot exceed the contract amount, Defendant cites the following cases: *Kopp v. Traders Gate City Nat. Bank*, 357 Mo. 659, 210 S.W.2d 49 (1948); *Whitworth v. Monahan's Estate*, 111 S.W.2d 931 (Mo.App.1938); *Blackwell*, 300 S.W. 1035; and *Hall v. Getman*, 121 Mo.App. 630, 97 S.W. 607 (1906). *See also Krupnick and Associates, Inc. v. Hellmich*, 378 S.W.2d 562 (Mo. 1964). The language in *Kopp, Whitworth, Blackwell*, and *Hall* indicating that a claimant's quantum meruit recovery is limited to the contract amount is obiter dicta. *See Muench v. South Side National Bank*, 251 S.W.2d 1, 6 (Mo.1952). *Krupnick* did not involve a quantum meruit claim. *Krupnick* proceeded upon his existing contract (not treated as abrogated or rescinded).

4. *See, e.g.*, cases cited *supra*, note 3.

er, courts have criticized indiscriminate application of the rule and have created exceptions, particularly in cases where the claimant's compensation under the express contract was not fixed and could not be accurately ascertained. For example in *Muench,* 251 S.W.2d 1, the claimant's evidence was that the deceased had specifically contracted to compensate her for her services by leaving her all his property at his death. Our supreme court declined to limit claimant's recovery to the contract amount (the net value of the estate), noting she had "abandoned the contract and sued in quantum meruit, for the reasonable value of her services." *Id.* at 5.[5]

In *Estate of Moore,* 802 S.W.2d 192, the claimant's evidence of mutual understanding was that he was to be paid one fourth of the deceased's estate in exchange for his services. Following *Muench,* we found that the appropriate recovery was the reasonable value of claimant's services to the deceased. Relying upon *Cooper v. Norman,* 424 S.W.2d 347 (Mo.App.1967), we refused to apply the rule that a claimant's recovery based on quantum meruit cannot exceed the contract amount.

*Cooper* involved a claim against a former employer for accounting services in which the defendant employer claimed the trial court erred because jury instructions did not limit the quantum meruit recovery to the "agreed price." *Id.* at 349[4]. In rejecting that allegation of trial court error, the Western District said:

> "To what amount could he [the trial judge] have limited the recovery by instructions when no definite or determinable compensation was shown by the pleadings or the evidence? The rule placing a restrictive limitation on the recovery allowable in a quantum meruit action is applicable, of necessity, only in those instances where the action had its inception in a contract where the compensation was

fixed or was susceptible of being accurately ascertained."

*Id.* at 350.

As was the case in *Muench* and *Estate of Moore,* the appropriate recovery for Plaintiffs was the reasonable value of their services to Defendant. When Plaintiffs and Defendant discussed what they would be paid for their services, their compensation was not fixed and could not be accurately ascertained, i.e., the farm plus the rest of Defendant's estate. *See Estate of Moore,* 802 S.W.2d at 196[7]. Thus, under the rule of *Cooper* as applied in *Estate of Moore,* Plaintiffs' recovery in quantum meruit is not limited to the "ultimate value of [Defendant's] estate." Point II is rejected.

Judgment affirmed.

PARRISH, C.J., and MONTGOMERY, J., concur.

---

**5.** The *Muench* court pointed out that many of the cases which indicate that a claimant's quantum meruit recovery is limited to the contract amount are cases which were not in point or cases where such language was clearly obiter dicta. The supreme court observed that in none of the cases did the court carefully analyze or fully discuss the reasoning of such a general rule, particularly as it applies to services rendered in return for a promise for a share of an estate. 251 S.W.2d at 6.