BURNS *v.* KIELEY'S ESTATE.

1. EXECUTORS AND ADMINISTRATORS—CLAIM MAY BE MADE UNDER EXPRESS OR IMPLIED CONTRACT.

> A claimant against decedent's estate for services rendered and for money furnished could proceed under the theory of an express contract, and, if unable to do that, could claim under an implied contract.

2. SAME—DECLARATIONS OF DECEDENT TENDED TO ESTABLISH AGREEMENT TO PAY FOR SERVICES.

> Declarations by decedent that he had promised and had told plaintiff she should have his property as her pay if she would continue to live with and work for him tended to establish an agreement.

3. SAME—RELATIONSHIP OF SECOND COUSINS INSUFFICIENT TO RAISE PRESUMPTION THAT SERVICES WERE GRATUITOUS.

> The relationship of second cousins is not such as to raise a presumption that services rendered by one to the other were gratuitous.

4. SAME—EVIDENCE SUFFICIENT TO TAKE TO JURY QUESTIONS OF CONTRACT AND ITS CHARACTER.

> Declarations of decedent that he had promised plaintiff to give her his property if she continued to live with and work for him, with the fact of her services, were sufficient to carry to the jury the issue of the agreement to pay for the services and the character of the contract.

5. SAME—ON QUANTUM MERUIT CLAIM EXPRESS CONTRACT MAY BE SHOWN.

> Under a claim on the *quantum meruit* against decedent's estate for services rendered, an express contract may be shown, both to establish that the services were to be paid for and also as bearing upon the value the parties put upon them.

6. SAME—MEASURE OF DAMAGES WHERE CONTRACT NOT FULFILLED.

> Although the worth of the property agreed to be given for services is evidence of the value the decedent put upon

[1]Executors and Administrators, 24 C. J. § 878; [3]Id., 24 C. J. § 881; [4]Id., 24 C. J. § 1142; [6]Executors and Administrators, 24 C. J. § 885.

them, and, in case of full performance, would of itself be
sufficient evidence of value to enable the jury to make a
fair award, it would not constitute an absolute measure
of damages where fulfillment of an express contract is not
claimed, but in such case the measure of damages is the
fair value of the services rendered less the compensatory
benefits received by plaintiff from decedent.

7. APPEAL AND ERROR—ADMITTING INCOMPETENT TESTIMONY—ERROR
NOT CURED BY INSTRUCTION.

Where incompetent testimony by plaintiff did not come in
incidentally or accidentally, but was insistently presented
over defendant's objection, and was very material to plain-
tiff's case, part of it not being covered by other witnesses,
the error was not cured by an instruction by the trial judge
to disregard such testimony as must have been within the
knowledge of deceased and take the testimony of other
witnesses.

8. HUSBAND AND WIFE—WHEN WIFE ENTITLED TO RECOVER.

If a contract by an unmarried woman to render services
to decedent was renewed after her marriage and after
removal of her disability by statute (3 Comp. Laws 1915,
§ 11478), she would be entitled to recover for the whole
term of service.

9. SAME—NOTICE OF HUSBAND'S CONSENT TO WIFE'S SEPARATE CON-
TRACT NOT NECESSARY WHERE SERVICES NOT RENDERED AS MEM-
BER OF HIS FAMILY.

Where the services rendered to decedent by a married
woman were not rendered by her as a member of her hus-
band's family, it was not necessary that decedent be in-
formed that the husband consented thereto in order for
her to recover therefor.

10. SAME—IMPLIED CONSENT OF HUSBAND TO WIFE'S SEPARATE CON-
TRACT.

That husband consented that wife have the benefit of her
own services may be implied from the facts.

11. SAME—FINDING THAT HUSBAND CONSENTED TO WIFE'S SEPARATE
CONTRACT WARRANTED BY FACTS.

Where a woman contracted to render services to decedent
before her marriage, and thereafter continued to render
them, a jury would be warranted in finding that her hus-

---

[7]Appeal and Error, 4 C. J. § 2974; [8]Husband and Wife, 30 C.
J. § 477; [9]Husband and Wife, 30 C. J. § 480; [10]Husband and Wife,
30 C. J. § 346.

band consented to the continuance of the contract for her own benefit.

Error to Wayne; Collingwood (Charles B.), J., presiding. Submitted April 27, 1928. (Docket No. 112.) Decided June 4, 1928.

Nellie D. Burns presented a claim against the estate of John Kieley, deceased, for services rendered. The claim was disallowed by the commissioners, and plaintiff appealed to the circuit court. Judgment for plaintiff. Defendant brings error. Reversed.

*Thomas W. Thompson* and *George H. Lovequest,* for appellant.

*Stevenson, Butzel, Eaman & Long* (*Rockwell T. Gust* and *Victor W. Klein,* of counsel), for appellee.

FEAD, C. J. This is review of a judgment for $28,947 upon a claim by plaintiff for services rendered John Kieley in his lifetime, the claim having been filed in the probate court of Wayne county and there disallowed, and trial having been had in the circuit court, with a jury, on appeal.

Plaintiff was a second cousin of Kieley. She came from Ireland in 1889, and began to live with decedent and his wife in 1890. She married in 1904, but, with her husband, continued to reside at Kieley's. In August, 1920, Frances Kieley, a niece of John, came to live with him, and in October or November plaintiff moved to a house a block away. Frances left in July, 1923, and plaintiff returned some time later in the year. Frances came back in August, 1924, and plaintiff again moved away and did not return to Kieley's during his lifetime. Kieley died in April, 1925. Plaintiff claimed she rendered services to him during the time she resided at his home, while she lived in her own house, and to the time of his death.

The evidence shows that plaintiff, while she lived at Kieley's, did all sorts of domestic and farm work and rendered personal nursing care to Kieley and his wife.    In 1915, Kieley sold his farm and gave plaintiff $3,000.    Upon his death, two notes of plaintiff to him were discovered, one dated September 4, 1920, for $43, and one April 12, no year, for $100.

Mrs. Mary Donahue testified that, shortly after plaintiff went to Kieley's to live, John Kieley told witness he had told plaintiff that, if she would stay there and work with them and do what work there was to be done, when he and his wife were done with it everything that remained was to go to her for her pay. She also stated that he repeated substantially the same statement in a conversation about four years before he died, and at the time when plaintiff was living away from him, saying that he was going to have her back. Rev. A. M. X. Sharpe testified that, in the latter part of 1924 or the forepart of 1925, Kieley told him that plaintiff would get everything he had when he died and was through with it.    Frank Steffes stated that a half dozen times before and after plaintiff was married, the last time about two months before Kieley died, the latter told him he had promised all his property to plaintiff, as she had worked hard for him. Mrs. Sophia Farland testified that in 1919 she told Kieley that she had deeded all her property to her daughter, and he replied, "that is just what I am going to do for Nellie.    Nellie shall have everything; she shall have all my property," and that she had "worked hard and would get all he had for her pay." John Kieley's estate was appraised at $34,321.30.

The plaintiff's claim, as originally filed, does not appear in the record.    In the application for appeal it is stated to be in the sum of $29,090, "for services rendered to and for money furnished to said John Kieley at his request and on his promise to pay for

such services and for money furnished in and around the house, farm, and business of said John Kieley, nursing and caring for his invalid and mentally incompetent wife during her lifetime," and for managing his dairy farm, from August, 1890, to and including September, 1924. In his opening statement, counsel for plaintiff announced that she claimed under an express contract, in that Kieley "promised that if she (plaintiff) would stay and work for him that he would at his death give her everything he had." In answer to demand from defendant's counsel, he said he would proceed upon the theory of an express contract, but, if unable to do that, would claim under an implied contract. He could do this. *In re Moon's Estate,* 219 Mich. 104. The plaintiff introduced no other evidence of the value of her services, but contended that as she had performed the express contract in full, the measure of damages was the value of the estate, reduced, however, to the *ad damnum* statement of the claim. The court so charged the measure of damages in case the jury found full performance by plaintiff, less the amount of the plaintiff's notes to decedent. Verdict for plaintiff was rendered accordingly.

The existence of a contract between plaintiff and decedent was not shown by direct evidence of conversations between them. However, the declarations made by decedent that he had *promised* and *had told* plaintiff she should have his property as her pay if she would continue to live with and work for him tended to establish an agreement. The relationship between them was not such as to raise a presumption that the services were rendered gratuitously. *In re Clark's Estate,* 234 Mich. 471. The declarations of the decedent, with the fact of plaintiff's services, were sufficient to carry to the jury the issue of the agreement to pay for the services and the character of the contract. *In re Moon's Estate, supra; In re*

*Engell's Estate,* 228 Mich. 385; *Payne* v. *Riley's Estate,* 240 Mich. 506.

As disclosed by the record, plaintiff's statement of cause of action in the probate court did not count upon an express contract to give her decedent's property for her services, but was plainly a claim upon the *quantum meruit.* Under such claim, an express contract may be shown, both to establish that the services were to be paid for and also as bearing upon the value the parties put upon them. The worth of the property agreed to be given is evidence of the value the deceased placed upon the services (*Riggs* v. *Riggs' Estate,* 232 Mich. 579; *In re Clark's Estate, supra*), and, in case of full performance by plaintiff, would, of itself, be sufficient evidence of value to enable the jury to make a fair award (*Payne* v. *Riley's Estate, supra*). But the essential theory of the *quantum meruit* prohibits the ruling that the worth of the property agreed to be given shall constitute an absolute measure of damages. It is to be taken in connection with the other circumstances to enable the jury to reach a fair measure of compensation for services performed. In this case, the worth of the property could not be a set measure of damages because plaintiff did not, in her statement of claim, assert fulfillment of an express contract. On the contrary, she claimed for compensation only to September, 1924, several months before decedent's death and during which intervening period performance by her was necessary to establish the value of the property as the agreed measure of her compensation under the claimed contract. The measure of damages is the fair value of the services rendered by plaintiff to decedent less the compensatory benefits she received from him. The worth of the estate may be considered by the jury in determining that value, but is not the measure of it. The court, therefore, did not err in submitting the value of decedent's property to the jury

as evidence of the worth of her services, but did err in declaring such value to be the absolute measure of damages.

Over objection by counsel for the defense, plaintiff testified in detail to services which she rendered for decedent and his wife and to financial support which she furnished them in pursuance of her claimed contract.   At the conclusion of the charge, on suggestion of plaintiff's counsel, the court directed the jury to disregard her testimony as to work she did, which must have been within the knowledge of John Kieley, and to "take the testimony of other parties than Nellie D. Burns, both as to whether there was a contract and as to the matter whether she performed those services." Usually such an instruction from the court may fairly be held to cure error in the admission of testimony, especially where the evidence came in incidentally or accidentally.   In this case, however, without plaintiff's improper testimony, there was no showing of the furnishing of support, of personal nursing services and care, practically none of work for decedent while she was living in her own home, and none at all that she performed services for him after she moved back in 1923.   Her own testimony gave continuity and force to her claim.   Without it, question of breach of the contract by decedent or by plaintiff, set-offs of money and support, and failure to perform by plaintiff would have been serious. The testimony did not come in casually.   It was insistently presented.   The protection of the estates of deceased persons demands that the introduction of the testimony be held reversible error.

Defendant further contends that plaintiff would not be entitled to recover for services from the time of her marriage in 1904 to the effective enactment of Act No. 196, Pub. Acts 1911 (3 Comp. Laws 1915, § 11478), under which a married woman became en-

titled to her own earnings, because there was no proof of her emancipation, with notice to decedent. If the contract between plaintiff and decedent was as claimed by her, and it was renewed after the statutory removal of her disability, she would be entitled to recover for the whole term of service.   *Riggs* v. *Riggs' Estate, supra.*   With plaintiff's incompetent testimony stricken, the services for which she claims were not rendered by her as a member of her husband's family as were those in *Sorensen* v. *Sorensen,* 211 Mich. 429, and other authorities cited by defendant. It was not necessary that decedent be informed that the husband consented to her contract.   *Ashley* v. *Smith's Estate,* 152 Mich. 197.   The husband's consent that the wife have the benefit of her own services may be implied from the facts.   30 C. J. p. 732.   Even without express declaration, there were sufficient facts in the present record to warrant a jury in finding that plaintiff's husband consented to her continuance of the contract for her own benefit.

The judgment is reversed and a new trial ordered, with costs.

NORTH, FELLOWS, POTTER, and SHARPE, JJ., concurred.   WIEST, CLARK, and McDONALD, JJ., concurred in the result.