BERTHA PARSONS, Appellant, v. WALTER S. WHITE, Executor of the Estate of JAMES G. GRUBB, Deceased, Respondent, No. 41751—231 S. W. (2d) 124.

Division Two, July 10, 1950.

*Everett Frieze* for appellant.

*Herman Pufahl* and *Richard C. Collins* for respondent.

938

TIPTON, J.—This is an action brought in the circuit court of Polk County by the plaintiff against Walter S. White, as executor of the estate of James G. Grubb, deceased, on an alleged oral contract made between deceased and the plaintiff for additional compensation on account of services plaintiff rendered deceased's ill wife, Kitty Grubb, covering a period of time between March, 1929, and March 25, 1939, the date of Kitty Grubb's death. A jury was waived and the trial court found the issues for defendant.

The trial court sustained defendant's motion to make plaintiff's petition more definite and certain and for a bill of particulars. The plaintiff did not amend her petition but did file what is termed a bill of particulars.

It is plaintiff's contention that her petition pleads both an action for breach of an oral contract to provide for her in deceased's will if she would help take care of his wife who was afflicted with a cancer, in addition to the five dollars a week he paid plaintiff, and an action in quantum meruit. The trial court held that under the evidence the plaintiff was not entitled to recover on either theory. We have come to the conclusion that the trial court's findings were correct. We will confine our discussion to the issues of whether under the evidence there was an oral contract as alleged by the plaintiff, and whether under the evidence the plaintiff is entitled to recover in quantum meruit.

It is admitted that the plaintiff did perform some services as a practical nurse and as a housekeeper in deceased's home. Deceased's wife died on March 25, 1939, while deceased died in March, 1948. Plaintiff does not contend that she performed any services for deceased after his wife died and she admits that she was paid five dollars a week for every week she did perform any services in the Grubb home. But it is the plaintiff's theory that he promised to make a will and in that way provide additional compensation for her.

The testimony to sustain the oral contract was given by members of the plaintiff's family with the exception of one witness. A. L. Parsons testified that he was the husband of the plaintiff and lived close to the Grubb home; that his wife started taking care of Mrs. Grubb in the year 1929; and that she was promptly paid five dollars every week. At first she did not spend very much time in the Grubb home, but before Mrs. Grubb's death she stayed there a great deal of the time.

In reference to the alleged oral contract he testified on direct examination as follows: "A. And so we talked along, and I says 'She has got to have more money,' and he [the deceased] says 'Now, Mr. Parsons,' he says, 'I am going to pay her,' he says, 'I am going to make a will,' he said, 'And I am going to remember her in my will,' and he says 'We are going to arrange to pay her well,' and

he says 'When my will is made,' he says, 'I am going to set a place there for her.' "

He testified that the above conversation took place at the Grubb home between Grubb and this witness in the presence of Mrs. Grubb and the plaintiff, and that these statements made by deceased were made after this witness told deceased his wife was not getting enough money.

Plaintiff's daughter, Mable Parsons, testified that she lived in Springfield but came home every week or two weeks over Sunday, and that on one occasion her father did not want her mother to go to the Grubb home because she was not paid enough. She testified: "Mr. Grubb said 'Well,' he said, 'I know I can't afford to pay her any more right now, but,' he said, 'she is going to be well remembered in the will,' and so he told us kids, he said, 'Your mother ain't going to lose anything by this.' " She also testified that Mr. Grubb wanted her mother to have the Trenton house. Grubb owned a house in Trenton, Missouri. She further testified that Grubb said that he did not intend for his son, Ernest, to have a dime.

David Parsons, a son of the plaintiff, testified that at the dinner table in the Grubb home he heard Mr. Grubb say in the presence of Mrs. Grubb and the plaintiff that the plaintiff was going to "be well paid, that she would be the only dependent." On cross examination the following took place: "Q. He didn't say how he would remember her in the will, and what he would give her, did he? A. No; the only thing, as I said while ago, was that he said at the dinner table that Mother would be the only dependent."

Another son of plaintiff, whose name was Pearl, testified that he came back from California about 1932 and his mother was staying part of the time at the Grubb home. He testified that Mr. Grubb stated he was not paying the plaintiff enough. He stated Mr. Grubb said: " 'Now, Abe, I am going to leave a will for her,' and Dad said 'You have got dependents, one,' and he said 'I don't aim for him to have a dime.' Q. And what did he say about your mother at that time? A. He said 'I am going to make it right; I am going to leave her a will.' "

Vivian Parsons was plaintiff's youngest son and he testified that he heard Mr. Grubb tell his mother: " 'I know, Mrs. Parsons' he said, 'That don't seem much for a week's work,' but he says, 'You will be provided for later on.' "

Plaintiff's husband and all of the children who testified in regard to the date the services by plaintiff began in the Grubb household stated she began working there in the year 1929. On cross examination these witnesses testified that plaintiff first began to work there a few weeks after "Aunt Frances" died. She was a sister of Mrs. Grubb. It was shown by newspaper articles that "Aunt Frances" died May 23, 1933. In fact, the plaintiff admitted into the record that "Aunt

Frances'' died in 1933, ▇▇▇ ·which was four years later than the date these witnesses testified that she began working for the Grubbs, and also four years later than the first time Mr. Grubb is supposed to have made statements about taking care of plaintiff in his will.

Helen Sloan, a neighbor girl, testified that she heard Mr. Grubb tell plaintiff when he paid her that '' 'I can't give you any more, because I don't have it,' but, he says, 'after the end, I will pay you more.' ''

Six witnesses who visited the Grubb home during the last few years of Mrs. Grubb's life testified that they were in the Grubb home at different times and that Mrs. Grubb was up and about, and that part of the time Mrs. Parsons was there and part of the time she was not.

''Proof of mere disposition to devise by will or convey by deed by way of gift, or as a reward for services, is not sufficient, but there must be shown a real contract to devise by will or convey by deed, made before the acts of performance relied upon were had.'' Walker v. Bohannan, 243 Mo. 119, l. c. 136, 147 S. W. 1024. See also McFall v. Hampe, 267 S. W. 54.

In this case one witness testified that Mr. Grubb intended to give plaintiff the house in Trenton. Another witness testified that she would be well taken care of, while another testified she would get all of the estate. Still another witness testified that Mr. Grubb said, '' 'I am going to pay her. I am going to make a will; we are going to pay her well when my will is made. I am going to set a place there for her.' ''

·Under plaintiff's bill of particulars she stated that the contract was entered into in the year 1929, and her husband testified that the first conversation he had with Mr. Grubb was about that time; yet, before the close of the case plaintiff admitted that ''Aunt Frances'' died in the year 1933, and Mr. Parson's testimony was that she did not perform any services for the Grubb family until after ''Aunt Frances'' died.

Contracts of this nature cannot be established by conversation either too ancient on the one hand or too loose or casual on the other. Walker v. Bohannan, supra.

Even if we believed all of plaintiff's witnesses in regard to extra compensation, which we do not, the amount is so indefinite as to be unenforceable. But we are of the opinion the evidence is not sufficient to establish an oral contract and the plaintiff is not entitled to recover on that theory.

▇ Nor do we think plaintiff is entitled to recover in quantum meruit. The testimony was that she did not stay at the Grubb home much at first but stayed there more as time went on. Some witnesses said she stayed there from one-half to two-thirds of the time. Her husband testified she stayed there about six months before Mrs. Grubb's death, but she was not there when Ernest Grubb and his wife were there from September 4, 1938, until after Thanksgiving of that

year. It is to be remembered Mrs. Grubb died in March, 1939, therefore, it cannot be true that she stayed there six months or more before Mrs. Grubb's death.

The record shows the trial court said: "Well, I can't find that she stayed there the last six months; I can't find that she stayed there one day or one year; and due to the fact that it is mere speculation to be done by me, and which I cannot do, I will have to render judgment for the Defendant." In her bill of particulars plaintiff stated she kept no record of the number of days she worked and has no way to determine the actual number of days worked for James G. Grubb. We are of the opinion this finding of the trial court was justified by this record.

Mr. and Mrs. Parsons lived in the same community with Mr. Grubb for nine years after Mrs. Grubb died, yet Mr. Grubb was never asked if he had made a will or if he could or would pay any additional compensation. This fact is some evidence which is adverse to the claim of plaintiff. Watkins v. Donnelly, 88 Mo. 322.

We think the judgment of the trial court was for the right party. It follows that it should be affirmed. It is so ordered. All concur.