Winifred REIGHLEY (Plaintiff),
Respondent,

v.

ESTATE of Dora A. FABRICIUS, Deceased,
Spiro Radulovich, Executor (Defendant),
Appellant.

No. 30260.

St. Louis Court of Appeals.

Missouri.

Feb. 16, 1960.

Richard M. Stout, St. Louis, for appellant.

Cobbs, Armstrong, Teasdale & Roos, Charles E. Dapron, St. Louis, for respondent.

BRADY, Commissioner.

The respondent filed a claim in the St. Louis Probate Court against appellant, the executor of the estate of Dora A. Fabricius, within the time prescribed by law for filing claims against estates. The claim alleged that decedent bequeathed her entire estate to Spiro Radulovich, executor, and left nothing to respondent. It is unnecessary to set out the whole claim, but it was made for domestic and nursing services rendered to decedent at the request of decedent and her husband during 1924 and 1925, and also for the same services rendered to decedent's mother-in-law during the years 1930, '31, '32 and '33. In paragraphs 4, 5, 6 and 7 of the claim, decedent is alleged to have promised to compensate respondent for these services by " * * * making provisions in her Will, giving, devising and bequeathing to plaintiff sufficient money and property so as to compensate plaintiff fairly, reasonably and adequately for the services which she, plaintiff, performed; * * *." Paragraphs 8 and 9 and the prayer of the claim read as follows:

"8. That contrary to the promises and agreements made by defendant's decedent, and in direct breach of the contract into which she had entered with plaintiff, as aforesaid, defendant's decedent failed and omitted to make any provision whatsoever for plaintiff in her last will, which instrument has been duly admitted to probate, as aforesaid.

"9. That the reasonable value of the services performed by plaintiff is Eight Thousand Dollars ($8,000.00); and that as the direct and proximate result of the breach, by defendant's decedent, of her contract with plaintiff, as aforesaid, defendant is indebted to

plaintiff in the said sum of Eight Thousand Dollars ($8,000.00).

"Wherefore, plaintiff prays judgment against defendant in the sum of Eight Thousand Dollars ($8,000.00), together with the costs of this action, said judgment to be paid out of the assets of the Estate of Dora A. Fabricius, deceased, by defendant, as Executor."

The record discloses that the claim was filed on December 10, 1956, and on February 28, 1958, in the probate court and prior to the decision therein, respondent was granted leave to amend her claim by striking and deleting all of paragraph 9 as above set forth, and by substituting in lieu thereof the following:

"9. That the reasonable value of the services performed by plaintiff as aforesaid is $8,000; that no part of same has been paid; and that defendant is indebted to plaintiff in this amount."

Respondent appealed to the circuit court from the probate court's adverse judgment.

The decedent was the sister of respondent's stepmother who reared respondent, and was called "Aunt Dora." Decedent married one Herman Fabricius in 1924, and in the spring of that year was to undergo an operation, and asked respondent to take care of her and her house while decedent was in the hospital and during convalescence. Respondent agreed, and for about a 30-day period nursed Aunt Dora and did the housekeeping and prepared the meals. Respondent lived at home with her husband during this month and went to Dora's house each day. Aunt Dora said, when requesting respondent to give these services, if respondent would do so, she would pay respondent some way later on in her will. Dora told her brother, Andrew Allen, during this period that respondent would be " * * * took care of after she was done gone" because she had

done so much for them. In 1925 Aunt Dora and her husband visited respondent and her husband at respondent's home, and upon being told that Aunt Dora would have to undergo another serious operation and in response to the request of Aunt Dora and her husband, respondent agreed to again nurse and care for Dora and do the general housework and cooking, being on duty practically 24 hours a day. Respondent's husband objected to respondent doing as Dora requested, stating that he couldn't take care of his work and his home both. Dora told respondent that she would take care of her as an heir "in my will." Respondent and her husband stored their furniture and respondent's husband got a room and respondent moved to Dora's, staying there and rendering services for about three months. In 1930 or 1931 respondent and her husband were living at Paris, Missouri, and in response to a letter from Dora came to visit her. Dora requested respondent to come to St. Louis to Agatha Fabricius' home to render nursing care to Agatha, Dora's mother-in-law, who had broken her hip, and do the housework and cleaning of Agatha's home. Respondent's husband again objected, stating that they would have to give up everything they had at the farm, but Dora said she couldn't take Agatha into her home and that Agatha didn't want to go there, and that respondent would be paid in Dora's will. Respondent and her husband sold the stock and machinery on their farm, and respondent went to Agatha Fabricius' home. Agatha was then about 90 years of age, and for more than three years, until Agatha's death in 1933, respondent took care of Agatha as a nurse, night and day, and did the general housework and all the cooking, living apart from her husband who moved to Palmyra, Missouri. Several months prior to Agatha's death, respondent's husband met with respondent, Dora, and Andrew Allen, and told them he wanted respondent to come home with him, and that Dora should make other arrangements for Agatha's care. Dora asked respond-

ent's husband to let respondent stay for a while. "You know I promised I would take care of Winifred (respondent) in my will, and I will." At Agatha's funeral, Dora told Lea Hale, respondent's sister, that she was grateful for all respondent did and that she wouldn't regret it. In 1941, Dora was with her brother at the probate court in Marble Hill, Mo. when their brother's estate was being administered and then told him that she had made a will and left everything to respondent because she had worked for her (Dora) like a slave. About four years later, Dora again told her brother that she had made a will and left everything to respondent. In 1942, at the wedding reception for Lea Hale's son, Dora told Mrs. Hale that she would always be grateful to respondent for what she did for Mother Fabricius (Agatha) and that respondent would be well cared for at the death of Dora and her husband. Just after Dora's brother died, Dora again told Mrs. Hale that respondent would be well cared for when she (Dora) died. Dora made similar statements to Mrs. Hale following her husband's death. In early 1949, Dora and Herman spent a weekend at the farm of respondent and her husband near Paris, Mo. and at the table Dora stated that she would never forget respondent for being so good to her and doing work for her, and that respondent would be well paid for it in her will. In the summer of 1952, respondent and her husband visited Dora at her home. Dora's husband was then dead. Dora told them that she would not forget what respondent had done for her and that she would take care of Winifred in her will. In 1924–1925, 1931–1933 domestic help in St. Louis earned about $3.50 per day, or $25 a week. The testimony as to the actual rendition of the services by respondent is uncontradicted.

The executor first became acquainted with Dora in 1950, when he rented a room in her home. He lived there until 1952, when he went to Denver, Colorado, and then upon his return in July, 1953, continuously until Dora's death in March, 1956. Dora made a will in 1953 and gave the attorney who drew it no instructions about any bequest to respondent, stating in response to the attorney's question of her as to whether or not she wanted to make any provision for the payment of any sums of money or property to any individual because of a debt she owed to such person, that she owed no one for anything. No documents or papers relating to respondent were found in Dora's effects. The will made no provision for respondent. Frances Fabricius, who was Dora's husband's brother's wife, testified that Dora stated to her that she intended to leave her property to the executor. This was sometime in the early 1950's. Before her marriage to Herman, Dora had a small millinery business. Agatha Fabricius did not use a bank account but kept a big roll of money under her mattress and paid cash for everything. Agatha left a net estate of $27,473.73 in personalty from which Herman received $9,157.91. It was stipulated that no claim was made by respondent against Agatha Fabricius' or Herman Fabricius' estates. Respondent and her husband never asked Dora if she had made the promised will nor requested payment from her for the services respondent rendered. Respondent's husband stated that he and respondent were satisfied with respondent's feeling that Aunt Dora would take care of respondent in her will. Respondent and her husband kept their financial affairs, in general, separate from each other and respondent's husband testified that he didn't know whether or not Agatha Fabricius had paid respondent anything or not, nor if Herman Fabricius had done so, and that for all he knew Herman could have paid her.

The trial court overruled the appellant's motion for directed verdict offered at the close of respondent's case, and at the close of all the evidence submitted the case to the jury. The respondent submitted its case on one instruction, which reads:

"Instruction No. 1

"The Court instructs the jury that if you find and believe from the evidence that during her lifetime Dora A. Fabricius, deceased, requested Winifred Reighley, claimant, to perform household and other menial duties for her such as washing, ironing, and general housekeeping, if you so find; and if you further find and believe from the evidence that Dora A. Fabricius, deceased, during her lifetime, requested Winifred Reighley, claimant, to come to the home of said Dora A. Fabricius, and care for said Dora A. Fabricius, and to care for her mother-in-law and to nurse and keep house for said Dora A. Fabricius and her mother-in-law, if you so find; and if you further find and believe that during her lifetime, Dora A. Fabricius promised and agreed with Winifred Reighley, claimant, to compensate said Winifred Reighley for the aforesaid services which the said Winifred Reighley would provide for the said Dora A. Fabricius, if you so find, by making provisions for said Winifred Reighley in the Last Will and Testament of said Dora A. Fabricius, if you so find; and if you further find and believe from the evidence that claimant, Winifred Reighley, in reliance on the promises of said Dora A. Fabricius, if you so find, did in fact render the personal services so requested to said Dora A. Fabricius, including housekeeping and other menial duties, if you so find, and if you further find and believe that the said Winifred Reighley gave up her own home and came to live with and care for said Dora A. Fabricius and her said mother-in-law, if you so find; and if you further find and believe from the evidence that said Dora A. Fabricius died and failed to make provision for said Winifred Reighley in the Last Will and Testament of said Dora A. Fabricius, if you so find, then the Court instructs the jury that your

verdict should be in favor of claimant, Winifred Reighley, and against defendant, Spiro Radulovich, Executor of the Estate of Dora Fabricius, and that in such event, you should award plaintiff such a sum as will fairly compensate her for the services performed by her, if any."

The trial court gave six instructions requested by appellant but refused to give appellant's Instruction No. A which directed a verdict for appellant and also refused appellant's Instruction No. B which reads:

"Instruction No. B

"The Court instructs the jury that in cases of this nature the claimant has the burden of proving her case against the Estate beyond a reasonable doubt.

"If, after weighing and considering all of the evidence, there remains in your minds a reasonable doubt as to the right of plaintiff to recover or not, then the Court instructs you that your verdict should be in favor of the defendant."

During the argument to the jury, respondent's attorney told the jury that there was " * * * approximately $21,000.00, in this estate that * * *" and the trial court overruled appellant's objection and motion for mistrial. This court is afforded the official transcript approved by the trial judge and a supplemental transcript tendered by respondent, not approved by the trial judge and certified by the reporter to have been "erroneously transcribed," which shows the above language of the argument of repondent's attorney as " * * * approximately $21,000.00 in this * * *."

Respondent received a jury verdict for $6,000. The trial court ordered a remittitur of $1,800, which was agreed to by respondent, and otherwise overruled appellant's after trial motions. Appellant urges four allegations of prejudicial error:

(1) That the trial court erred in overruling the motion for directed verdict filed at the close of all the evidence .for the reason that a submissible case was not made by respondent because: (a) The evidence of statements by decedent about making a will in respondent's favor was too vague; (b) if the claim was for damages for breach of a contract to make a will in respondent's favor, it cannot be maintained; (c) the claim being originally filed for damages for breach of contract, the amendment to claim for reasonable value of the services, having been made after the time for filing claims had expired, does not make the claim state a cause of action, and (d) if the claim was one in quantum meruit it was barred by the five-year Statute of Limitations, no facts having been shown which would toll the statute. (2) It was reversible error to give Instruction No. 1 because (a) it does not require a finding of meeting of minds before rendition of the services; (b) it does not require a finding of facts sufficient to give rise to a cause of action for services to Agatha Fabricius independently of claimant's alleged contract for services to Dora Fabricius, and permits recovery for services to Agatha upon a contract only for services to be rendered to Dora; (c) it omits the essential element of requiring the jury to find nonpayment for claimant's services before permitting her to recover therefor; the measure of damages is incorrectly stated as being "such sum as will fairly compensate," rather than "reasonable value." (3) The court erred in permitting claimant's attorney to argue to the jury, over objection, that there was "$21,000.00 in this estate," when such was not shown by the evidence, and was inflammatory and prejudicial as a reference to the wealth of a party. (4) The court erred in refusing to instruct the jury, at the request of the estate, that the claimant had the burden of proving her case beyond a reasonable doubt, and in permitting her to recover on proof by a preponderance of the evidence.

This case presents two important points for this court's decision. They are: (1) did the claim state a cause of action; and (2) was the evidence sufficient to authorize submission of the case to the jury.

Concerning the first point stated above, appellant contends that a suit cannot be maintained against the executor for damages for breach of a contract to make a bequest under a will in exchange for services rendered, and relies upon Hall v. Getman, 121 Mo.App. 630, 97 S.W. 607, and Whitworth v. Monahan's Estate, Mo. App., 111 S.W.2d 931.

The answer to appellant's contention is that he mistakes the nature of the contract in the case at bar. In the Hall v. Getman case, the oral contract was alleged to be that the decedent, in consideration of services to be rendered by the claimant and which were thereafter fully performed, agreed that the claimant should receive the decedent's whole estate at her death. In the Whitworth case, the alleged contract was that the decedent agreed to pay the claimant as compensation for general housekeeping and nursing and care of the decedent, the entire amount of the estate at his death. In each of those cases, the court denied recovery upon the breach of contract theory, and rightly so, for the reason that the damages could not be accurately measured in such action. The court said in the Hall v. Getman case (121 Mo.App. loc. cit. 640, 97 S.W. loc. cit. 610) that the insufficiency of the rules controlling the measurement of damages in actions at law for breach of contract to accurately estimate the damages sustained in cases of this character is the reason that courts compel a claimant to resort to equity and an action for specific performance, if the claimant seeks the full fruits of the contract; i. e., the whole estate.

The same basis was stated by this court for the ruling on the Whitworth case, where at loc. cit. 933 of 111 S.W.2d it is said:

" * * * (the claim) in *no sense* purports to be a claim for the reason-

able value of her services, but instead is a specific claim for the amount of the *whole* estate; and the recovery of the *whole* estate is sought, *not upon the theory that the services were reasonably worth* the value of the whole estate, but simply for the reason that the contract so provided." (Emphases added.)

The Supreme Court of this State referred to this distinction in the case of Muench v. South Side National Bank, Mo., 251 S.W.2d 1, loc. cit. 4, where the court said:

"After the failure of deceased to keep his promise to compensate for the services by leaving his property to the plaintiff, she had three remedies. She could (1) bring a suit in equity for specific performance, and if her contentions were sustained, would receive the property owned at his death less expenses of administration and provable debts against the estate, (2) maintain (under certain circumstances) a suit for damages for breach of contract, or (3) abandon the contract and sue in quantum meruit for the reasonable value of those services. Joseph v. Joseph, Mo. App., 164 S.W.2d 145; Blackwell v. De Arment's Estate, Mo.App., 300 S.W. 1035; 34 C.J.S. Executors and Administrators § 373, page 119."

The "certain circumstances" that the court was there referring to were those where the contract was such that the damages for its breach could be adequately measured in an action at law based upon breach of the contract. In that case, the specific contract was alleged to be that all of the property of decedent would be left to claimant in return for the services and the court recognized the Hall and Whitworth line of cases by following the above quoted portion of that decision with this statement:

"It seems to be conceded by everyone that there could be no recovery on a suit for damages for breach of the contract because of the Statute of Wills, the Statute of Frauds and the impossi-

bility of proving the net value of the estate to which amount plaintiff's recovery would be limited in that kind of a suit. Hall v. Getman, 121 Mo.App. 630, 97 S.W. 607."

The case of Blackwell v. De Arment's Estate, Mo.App., 300 S.W. 1035, is another recognition of the distinction in the cases. In that case, the claim was not as extensively set forth as it was in the case at bar, but it nevertheless set out an alleged agreement to compensate claimant for services rendered to the decedent during the decedent's lifetime by leaving the claimant one-half of the estate. There was no evidence of any blood relationship and the court found, loc. cit. 1037(3), no family relationship. At loc. cit. 1037, the court said:

"The rule has been laid down in Hall v. Getman, 121 Mo.App. 630, 97 S.W. 607, a case very similar to the case at bar, that in a case of this character the plaintiff may sue the heirs in equity for a specific performance of the contract, or plaintiff may abandon the contract and sue the administrator in an action in law on quantum meruit for services, or sue the administrator at law upon the contract for its breach and recover damages, the measure of damages being the contract price or its value."

Obviously, the damages for the breach of the contract in the Blackwell case could no more be adequately measured in an action at law than could the damages in the Hall or Whitworth cases, and had the claimant in the Blackwell case proceeded upon a breach of contract theory he would have been confronted with the same ruling as was made in the Hall and Whitworth cases. The claimant did not do so, but proceeded upon a theory of quantum meruit; but the recognition of the availability of an action at law upon the contract to recover damages for the breach thereof is unmistakable. The court said, " * * * the measure of damages being the con-

tract price or its value." The contract price was not ascertainable in an action at law in either the Hall, Whitworth or Blackwell cases, but the contract price is ascertainable in such an action in the case at bar. It is that named in the contract itself, the reasonable value of the services. Even in the Hall case, the court indicated that the measure of damage problem inherent in that contract which called for the whole estate would be eliminated by restricting claimant's recovery to the reasonable value of her services, for the court held at page 640 of 121 Mo.App., at page 610 of 97 S.W. that the trial judge's error was in fixing the measure of damages at the value of the property promised regardless of the value of the services rendered.

In the recent case of Moore v. Adams' Estate, Mo., 303 S.W.2d 936, the court held that a submissible case was made by evidence establishing an oral contract between claimant and deceased by which the claimant was to be paid at decedent's death from the assets of decedent's estate the sum of $2 per hour for the work which claimant would do on decedent's real property after the agreement and prior to decedent's death. The measure of damages could be readily ascertained.

Appellant urges that the case of Farris v. Faris' Estate, Mo.App., 212 S.W.2d 71, controls this point of the case at bar. That case was a proceeding by a nephew to recover for the reasonable value of services he rendered to his deceased aunt under a verbal agreement and understanding between him and the deceased, whereby he would render the services and the deceased would pay him at her death by provision in her will. The court there held, supra, loc. cit. 74(4), that in effect the pleadings were that the services were rendered under a verbal agreement and understanding between the nephew and deceased; that it was therein agreed the nephew would render the services; that the deceased would pay him therefor; that the payment would be made after her death; that the manner of such payment would be

by provision therefor in deceased's will, out of the assets of her estate; and that such testamentary provision would be suitable and adequate to cover the reasonable value of the services. These pleadings were held to constitute a pleading of express contract. The pleadings in the case at bar and the Farris case, [212 S.W.2d 75] are identical in effect except for the deletion of the phrase "suitable and adequate" as used in the Farris case and the substitution in the case at bar of "fairly reasonably and adequately." The Farris case actually lends support to respondent's position and for the decision herein. The court did not rule upon the point of whether or not an action at law for breach of contract where the contract calls for the reasonable value of the services could be maintained, holding that the indirect evidence, there being no direct evidence, was insufficient as a matter of law to establish the express contract. See McDaniel v. McDaniel, Mo., 305 S.W. 2d 461, loc. cit. 464, where the Farris case is so interpreted. A fair reading of the opinion compels the inference that had the court found claimant's evidence sufficient to establish the contract, the judgment would have been affirmed. In effect, the case is a recognition, by dictum, that such an action can be maintained.

Prior to the amendment of February, 1958, the claim was clearly in law for breach of contract. It is this court's decision that a suit can be maintained against an executor or administrator for damages for breach of a contract to make a bequest under a will in exchange for services rendered to the decedent, where the contract was for the reasonable value of the services rendered. As originally filed, the claim stated a cause of action.

As stated below, this court holds the procedure of respondent to be in quantum meruit but it was necessary to determine whether or not respondent's original claim did state a cause of action for breach of contract for the reason that if the demand in its original form had been insufficient,

it could not have been amended after expiration of the statutory period of limitations so as to avoid the statutory limit of nine months for filing claims against an estate of a deceased person, as provided in Section 473.360 RSMo 1949, V.A.M.S., and neither the probate court nor the circuit court could have acquired any jurisdiction to hear and determine the claim. In re Franz' Estate, Mo., 245 S.W.2d 1, loc. cit. 5; Siegel v. Ellis, Mo., 288 S.W.2d 932. But it is herein held that the original claim was sufficient, and therefore the amendment related back to the date of original filing and was permissible.

■■ It is difficult to determine after the amendment of February, 1958, whether respondent was proceeding in quantum meruit or for breach of contract. The difference in the contents of paragraph 9 prior to amendment and after amendment was the deletion of the phrase, " * * * and that as the direct and proximate result of the breach, by defendant's decedent, of her contract with plaintiff, as aforesaid, * * *." This language clearly sounds in contract. The deletion of that language and a careful reading of the amended claim compels the conclusion that it was a proceeding on the theory of quantum meruit. This court cannot sustain appellant's contention that the pleading and proving of the specific promise prevents this claim from being on the theory of quantum meruit.

As the Supreme Court held in Muench v. South Side National Bank, supra, 251 S.W.2d loc. cit. 5:

"The fact that the petition alleges a promise to pay for the services does not prevent it from being an action in quantum meruit. Joern v. Bang, Mo. App., 200 S.W. 737; In re Stein's Estate, Mo.App., 177 S.W.2d 678; Tock v. Tock, Mo.App., 120 S.W.2d 169."

Earlier on that same page, the court gives the reason that an allegation of a specific promise to pay for services is not fatal to an action in quantum meruit, stating:

"Evidence of the express promise to pay and the agreed compensation, was admissible to show an intention on the part of the deceased to pay for the services, that plaintiff expected payment and the value the parties put upon them. Burns v. Kieley's Estate, 242 Mich. 668, 219 N.W. 743."

And the court held, loc. cit. 4:

"When plaintiff pleaded and proved a specific promise to pay for the services, and the jury was required to find a specific promise, she assumed a greater burden than the law required and the defendant could not complain of it. Henderson v. Dolas, Mo.Sup., 217 S.W.2d 554. She merely pleaded and proved and the jury was required to find that which the law would have otherwise implied."

In the case of Oliver L. Taetz, Inc. v. Groff, 363 Mo. 825, 253 S.W.2d 824, 829, the court quoted from Fuldner v. Isaac T. Cook Co., Mo.App., 127 S.W.2d 726, loc. cit. 731, as follows:

" 'But where, as here, an express contract has been fully performed on plaintiff's part, and nothing remains to be done under it but the payment of money by defendant, which is nothing more than the law would imply, *plaintiff may declare specially on the contract, or generally in indebitatus assumpsit as for the quantum meruit, at his election. The plaintiff does not repudiate the contract nor seek to avoid it in indebitatus assumpsit as for the quantum meruit, but offers the contract in evidence and his proof of compliance with it to sustain his case. The agreed price, if there is an agreed price, becomes prima facie evidence of the reasonable value of the service.* But plaintiff may not recover more than the agreed price. Stollings v. Sappington, 8 Mo. 118; Perles & Stone v. Childs Co., 340 Mo. 1125, 104 S.W.2d 361; American Surety Co. of New York v. Fruin-Bambrick

Const. Co., 182 Mo.App. 667, 166 S.W. 333; 5 C.J. 1386, 1387, 1388.'" (Emphasis supplied.)

In Blackwell v. De Arment's Estate, supra, 300 S.W. loc. cit. 1037, this court held that an oral contract being alleged and proved does not prevent an action on quantum meruit. The court discussed Hall v. Getman, supra, and quoted therefrom, and then stated:

"This case is direct authority that plaintiff may on this oral contract maintain an action at law against the estate on quantum meruit, and the measure of damages is the reasonable value of the services rendered not to exceed the amount agreed upon."

■ In Balsano v. Madden, Mo.App., 138 S.W.2d 660, this court held very similar pleadings to state a cause of action in quantum meruit relying, in part, on the fact that. the claimant in that case as in this (after the amendment of paragraph 9 of the claim) prayed only for the reasonable value of her service and not for damages for the breach of the contract (as did paragraph 9 before its amendment). In this case, not only was it permissible in an action to recover on a theory of quantum meruit to allege and prove the contract, it was necessary to do so. The rule is that where a family relationship exists, no promise or agreement that the services are to be paid for is to be implied from the mere performance and acceptance of the services and a presumption arises that such services were rendered gratuitously. In sustaining the burden cast upon him by that presumption, the claimant must prove, either by direct evidence or by evidence from which it may be reasonably inferred, that there was in fact an agreement or mutual understanding that there was to be remuneration for the services rendered. McDaniel v. McDaniel, supra, 305 S.W.2d loc. cit. 464. While the evidence was uncontradicted that there was no blood relationship between the claimant and decedent, and although appellant did not file any pleadings,

the court did, at his request, give Instruction No. 3 which submitted the issue of the existence of a family relationship to the jury. The evidence of the special contract went, therefore, to establish such a contract to overcome the presumption that would arise from the finding of a family relationship, had the jury so found. There is no issue before this court as to the propriety of such an instruction, but such a defense is held to be in the nature of confession and avoidance, and a special and affirmative defense that must be specially pleaded. Muench v. South Side National Bank, supra.

■ Even if the amended claim may be said to be uncertain as to the theory of recovery stated, the result is the same. The rule in such cases is that the claimant will be permitted to recover upon whichever of the two theories his evidence may warrant. See In re Hukreda's Estate, Mo., 172 S.W.2d 824, loc. cit. page 826, where the court said:

"If 'it is impossible to say with definiteness whether the plaintiff is counting upon an express contract or upon quantum meruit, he will be permitted to recover upon whichever of the two theories his evidence may warrant.' Whitworth v. Monahan's Estate, 111 S.W.2d loc. cit. 933; United States Fidelity & Guaranty Co. v. Mississippi Valley Trust Co., Mo.App., 153 S.W. 2d 752."

It follows that regardless of whether the claim is considered as stating in quantum meruit after the date of the amendment, or even if it could be said to be uncertain as to which theory the claim then proceeded upon, it clearly stated a cause of action.

■ Appellant's attack on respondent's proceeding upon a theory of quantum meruit is not based on a contention that such a theory will not lie in this case, but instead proceeds on the basis that the undisputed evidence shows that all the services rendered by respondent took place more than

five years prior to filing of the claim. What is held later in this opinion regarding the sufficiency of the evidence disposes of appellant's contention. It is held later herein that the evidence was sufficient to submit the question to the jury of whether or not Dora promised the respondent to compensate her for her services by making provision for her in Dora's last will and testament, and the jury having found by its verdict that this was the promise, it follows that the statute of limitations did not begin to run against this action until Dora's death. Blackwell v. De Arment's Estate, supra; Mittendorf v. Koeller, Mo.App., 145 S.W.2d 470, loc. cit. 471. As this court said in Balsano v. Madden, supra, 138 S.W.2d loc. cit. 663:

> "Under plaintiff's own theory of the case, there was no room for the insistence that her action was barred by limitation of time. Her theory was that under the agreement between her and the deceased, she was ultimately to be compensated for her services by a bequest in his will; and if this were the fact, as her evidence tended to establish, then her right of action did not accrue until the death of the deceased intestate on May 5, 1937. Blackwell v. De Arment's Estate, Mo.App., 300 S.W. 1035. The deceased's death was followed in slightly more than three months by the institution of the present action, so that from the standpoint of the cause of action asserted by plaintiff, there was no defense of limitation to be interposed."

This claim was not barred by Section 516.-120 RSMo 1949, V.A.M.S.

■ The second point raised by appellant is whether or not the evidence was sufficient to authorize submission of this case to the jury. At the risk of being repetitious, it is important to set out, apart from the other evidence, the evidence of an oral contract to make a will in favor of respondent, or to make a will in which respondent was paid for the services she had rendered to Agatha or Dora Fabricius. This evidence was given by the following witnesses at the times noted and in the language quoted:

From the testimony of respondent's husband, her principal witness: 1924—"* * * She would pay her some way later on in her will—some way or another, * * *"; in 1925—"That she would take care of Winifred some way or another later on as an heir in 'my will'"; in 1930—"* * * that Winifred would be paid (in Dora's will)"; in 1933—"'You know I promised I would take care of Winifred in my will, and I will.'" In 1949—"Aunt Dora told us all at the table that Winifred had been so good to her and doing work for her, that she would never forget her and that she would be well paid for it in her will * * *"; in 1952— "* * * that she will never forget her, what she has done for her, and that she would be well taken care of in her will for what she has done."

From the testimony of Lea Hale: in 1933—"* * * She wouldn't regret it"; in 1942—"* * * she would be taken care of" at Dora and Herman's death; "when she (Dora) died she would be 'well cared for.'"

From the testimony of Andrew Jackson Allen, the brother of Dora, who testified by deposition, being deceased at the time of the trial: in 1924–1925—"She said she'd be took care of after she was done gone;" in 1930—"She said they had hired her to take care of her, but she said she didn't know whether they'd ever get to pay her; maybe sometime after her death she'd be took care of;" in 1931—"She said she was going to fix it so Winifred would get what she had when she died." The only testimony that Dora ever said she had made a will also comes from the witness, Allen, who testified that in 1941 when he was with Dora during the administration of their brother's estate in the probate court in Marble Hill, Missouri, Dora said "I have got a will" and told him that she was leaving her property to Winifred. In 1945 during the course of a lawsuit which was being tried in Jack-

son, Missouri, Allen testified that Dora told him that she had left a will and that the beneficiary of that will was Winifred Reighley. It is true that counsel for respondent, who offered Allen's testimony, characterized that witness as being " * * * not a very bright person, * * *" but there was no evidence offered to contradict Allen's testimony and his credibility was for the jury.

Whether Aunt Dora's declarations regarding services rendered her were mere expressions of gratitude, generosity, appreciation or intended bounty (which are not sufficient) or are statements from which an inference may fairly and reasonably be drawn that an agreement or understanding existed to pay for such services depends upon all the surrounding facts and circumstances in each case. Clow v. Wormington, Mo.App., 206 S.W. 415; Farris v. Faris' Estate, supra.

 Appellant relies upon Parsons v. White, 360 Mo. 935, 231 S.W.2d 124, and Walker v. Bohannan, 243 Mo. 119, 147 S.W. 1024; and contends that the above testimony is not sufficient and falls within the rule that the contract cannot be proved by conversation either too ancient, on one hand, or too loose or casual, on the other. The Walker case is clearly distinguishable and does not rule the point presented here. That was an action for specific performance of an oral agreement involving a transfer of a real estate title. The court's decision was based upon the strict standard of proof required in such cases. The Parsons case was a case tried before the court, the jury having been waived. The trial court didn't believe the claimant's witnesses, and the Supreme Court held that the evidence justified the trial court's finding. In this case, the jury evidently believed the respondent's witnesses and found the issues of facts in favor of the respondent. The evidence justified submission of that issue to the jury and this court cannot now reweigh the evidence. The jury's verdict on factual issues is final so long as there is evidence to sup-

port it. The rule is stated in Siegel v. Ellis, supra, 288 S.W.2d loc. cit. 934:

"* * * we do not weigh the evidence in jury-tried cases. It is only when there is a complete absence of probative facts in such cases to support the verdict that appellate courts are authorized to interfere. 3 Mo.Dig.Pt. 2, Appeal and Error, ☞1003 and 1001 (1). Consequently, we must state and review the evidence from the viewpoint most favorable to respondent, Machens v. Machens, Mo., 263 S.W.2d 724, 734 (16), and disregard defendant's evidence except to the extent it aids plaintiff's case * * *."

This also disposes of appellant's contentions that the testimony, that respondent never asked Aunt Dora whether or not she had in fact kept her promise to make a will, that Aunt Dora had conversations some years after the rendition of the services which repel any inference to be drawn from Allen's testimony, that respondent's husband stated that respondent for all he knew may have been paid for her services, and that respondent filed no claim against Agatha's or Herman's estates, requires this court to find there was not sufficient evidence of a valid and binding contract. The jury heard that evidence, weighed it against respondent's evidence, and their verdict is binding on that issue. In any event, in considering appellant's point on appeal, we are to disregard the executor's evidence except as it aids respondent's case. Machens v. Machens, cited in Siegel v. Ellis, supra.

On the question of the sufficiency of the evidence, the appellant again relies upon Farris v. Faris' Estate, supra. In that case the court said, 212 S.W.2d loc. cit. 77:

"As said under similar facts in Smith v. Davis' Estate, supra, 206 Mo.App. [446], at page 462, 230 S.W. [670], loc. cit. 674:

" 'Where the claimant gives up a home or other employment and comes

*to live with the parent or party from whom remuneration is asked,* **or** where such party goes and lives in the home of the claimant, and it is shown that he is receiving, because of such changed relation, valuable services, *there will be required much less evidence from which a remunerative relation can be inferred* than in those cases where the claimant himself is the recipient of a home and from which he derives much that is valuable in life.'" (Emphasis supplied.)

On two of the occasions mentioned in evidence, respondent gave up her home and went into Dora's and Agatha's homes. On the other occasion she went into Dora's home each day for all of the day. In addition we believe that Farris v. Faris' Estate, supra, is distinguishable on the point on the grounds that there was a family relationship present in that case, and thus the proof required was stronger than that where no such relationship exists. In this case the jury refused to make the findings requested by appellant in Instruction No. 3 on the point of the family relationship. Moreover, the evidence in the case at bar is much stronger than it was in the Farris' case. The lack of a family relationship and the fact that respondent gave up her home to care for Dora and Agatha, combined with the testimony of Dora's statements, constituted cogent and persuasive evidence of probative force sufficient to authorize submission of the issue to the jury.

■ Appellant attacks the action of the trial court giving Instruction No. 1 as being prejudicially erroneous. He urges that the instruction does not require a finding of the meeting of the minds before the rendition of the services. But the instruction clearly does require the jury to so find by stating " * * * and if you further find and believe that during her lifetime, Dora A. Fabricius promised and agreed with Winifred Reighley, claimant, to compensate said Winifred Reighley for the aforesaid services which the said Winifred Reighley would provide for the said Dora A. Fabricius, if you so find, by making provision for said Winifred Reighley in the Last Will and Testament of said Dora A. Fabricius, if you so find * *." We believe that the words "would provide" clearly indicate and require the jury to find that the promise was made prior to the rendition of the services. Moreover, the court gave the appellant's requested Instruction No. 2 wherein "The court instructs the jury that no person has a legal right, *after furnishing* what he intended as a gratuity at the time he furnished same, to convert the same into a charge; * * *." (Emphasis supplied.) All the instructions are to be construed together, and although we think the language of Instruction No. 1 is clear of itself, if there was any confusion it was cured by the quoted part of Instruction No. 2, which was given at the request of appellant and which the jury refused to follow.

■ Appellant urges that Instruction No. 1 fails to require a finding of facts sufficient to give rise to a cause of action for the services respondent rendered to Agatha independently of respondent's alleged contract for services to Dora. The instruction clearly states, " * * * and if you further find and believe from the evidence that Dora A. Fabricius, deceased, during her lifetime, requested Winifred Reighley, claimant, to come to the home of said Dora A. Fabricius, and care for said Dora A. Fabricius, and to care for her mother-in-law and to nurse and keep house for said Dora A. Fabricius and her mother-in-law, if you so find; * * *." When this portion of the instruction is read in connection with the portion previously quoted herein, which it immediately follows, it is clear that the jury was required to find that the " * * * aforesaid services which the said Winifred Reighley would provide for the said Dora A. Fabricius * * *" included those services rendered to Agatha as well as

those rendered to Dora. Moreover, if appellant was of the opinion that the instruction was confusing on this ground, he could have offered a clarifying or amplifying instruction and should have done so. Herrman v. Daffin, Mo.App., 302 S.W.2d 313; Barnes v. Vandergrift, 364 Mo. 829, 269 S.W.2d 13; Witt v. Peterson, Mo., 310 S.W.2d 857.

 Instruction No. 1 was not prejudicially erroneous because it omitted any finding by the jury negating any payment received by respondent for her services rendered to either Agatha for Dora, or those rendered to Dora for herself. The finding as to the contract and performance and breach was sufficient to establish that the services were not gratuitously rendered, and had not been paid for. Nibler v. Coltrane, Mo., 275 S.W.2d 270, loc. cit. 277. The language of the Supreme Court in the Nibler case, on the motion for rehearing, also disposes of this contention (loc. cit. 279):

"As stated in the opinion, we think that the evidence was sufficient to sustain an inference that plaintiff was not paid the reasonable value of her services, however, it was unnecessary for plaintiff to prove or submit the *non-payment* of her claim for services rendered. Non-payment was not an essential element of plaintiff's cause of action to recover the reasonable value of her services. Although she pleaded non-payment, she did not need to prove it, nor submit it to the jury. Ferguson v. Dalton, 158 Mo. 323, 326, 59 S.W. 88; Adkinson v. McKay, 186 Mo.App. 391, 399, 172 S.W. 83. Proof of non-payment was unnecessary to the establishment of liability, or to prove the indebtedness to plaintiff for the services in question. On the facts shown the law imposed the obligation to pay. Ferguson v. Dalton, supra. And see State ex rel. Spaulding v. Peterson, 142 Mo. 526, 532, 39 S.W. 453, 40 S.W. 1094. Payment was an affirmative defense. Section 509.090 R.S.Mo.1949, V.A.M.S. The burden of pleading and proving payment in this action rested upon the defendant. Pflanz v. Pflanz, 237 Mo.App. 873, 880, 177 S.W.2d 631. It was a matter of defense to be submitted to the jury in defendant's instructions. See Kines v. Jamison, Mo.App., 277 S.W. 969, 972(2, 3)."

 Neither can this court agree that there was prejudicial error in the measure of damage portion of Instruction No. 1. The appellant objects to use of the phrase, " * * * such sum as will fairly compensate * * *", and urges that the language that should have been used was "reasonable value." The correct test of an instruction is how the instruction will naturally be understood by the average men who compose our juries, upon whose judgment of the facts the court must act. Lewis v. Zagata, 350 Mo. 446, 166 S.W.2d 541. Webster's New International Dictionary, 2d Ed., defines the word "fair" as "equitable as basis for exchange; reasonable." This court does not believe this instruction could mislead the jury and cause them to believe that to fairly compensate respondent would mean anything other than to give her the reasonable value for her services. The record discloses that the appellant failed to offer any instruction on the measure of damages, and failure to do so has been held to preclude a complaint about the measure of damage instruction given. Alexander v. Star-Chronicle Publishing Co., 197 Mo.App. 601, 198 S.W. 467, at page 471.

Nor was Instruction No. 1 prejudicially erroneous because it does not require the jury to find that compensation for the services was to be provided. That portion of Instruction No. 1 set out earlier herein clearly and explicitly requires the jury to find that Dora promised and agreed with respondent to compensate respondent for the services which respondent rendered.

■ This court does not find any prejudicial error committed by the trial court by refusing to give appellant's offered Instruction No. B requiring respondent to prove her case beyond a reasonable doubt. Appellant urges that since death has closed Dora Fabricius' lips, and the lips of many who knew her and about the facts of this case, reason and good conscience dictate that proof beyond a reasonable doubt should be required in cases of this nature. But Dora's death also closed the lips of respondent for the purpose of testifying. Farris v. Faris' Estate, supra, 212 S.W.2d loc. cit. 75. Instructions in civil cases requiring a greater proof than a preponderance of the credible evidence have been generally condemned. Highfill v. Brown, Mo., 320 S.W.2d 493. As stated earlier herein, this was not a case in equity for specific performance but was a case at law. The rules as to the proof required in actions at law are not by any means as strict as those required in actions in equity for specific performance. McFall v. Hampe, Mo.App., 267 S.W. 54, loc. cit. 58. The instruction correctly states the burden of proof required.

■ The remaining contention of prejudicial error concerns the oral argument of respondent's counsel. In considering the point, this court will disregard the supplemental transcript and confine itself to the statement of counsel as shown in the transcript approved by the trial court and certified as correct by the court reporter. Respondent in her brief states that the figure named was used earlier in cross-examination. It was, and was objected to, and the objection sustained. There was never any testimony as to that figure or any figure as the amount in the estate. The remark was subject to objection, but it does not follow that the failure to sustain the objection constitutes prejudicial error and requires a new trial. Appellant did not request the trial court to instruct the jury to disregard it, but contented himself with the motion for a mistrial which the trial court overruled. This is not a case of such manifest abuse of the trial court's discretion that this court should interfere.

The Commissioner recommends the judgment be affirmed.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of the court.

The judgment of the circuit court is affirmed.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.